## Florence Dangelmeier v. Union Light, Heat and Power Company.

## City of Dayton v. Florence Dangelmeier.

(Decided November 23, 1926.)

Appeals from Campbell Circuit Court.

1. Municipal Corporations—Evidence Held Insufficient to Take to Jury Question of Liability for Injuries Received by Pedestrian When She Stepped Into Depression in Front of Her Property.— Evidence held insufficient to take to jury question of liability of city or of light company for injuries received by plaintiff, at curb in front of her property, when she stepped into depression resulting from excavating done by her plumber, who installed plumbing and water line.

2. Indemnity.—City, held liable to one injured because of defects or obstructions in streets, may recover over against one who created defect or caused obstruction.

OSCAR H. FORSTER for city of Dayton.

MATT HEROLD and GEORGE J. HEROLD for Union Light, Heat & Power Company.

HUBBARD SCHWARTZ and D. A. TAYLOR for Florence Dangelmeier.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming the former and reversing the latter.

These two appeals grow out of a single cause of action. Florence Dangelmeier, appellant in one of them, and appellee in the other, was plaintiff below. Union Light, Heat and Power Company, a corporation, appellee in one of the appeals, was one of the defendants below, and the city of Dayton, appellant in the other, was also a defendant below. Both appeals will be disposed of in one opinion, and for convenience we will refer to the

parties as Mrs. Dangelmeier, the corporation, and the municipality. Mrs. Dangelmeier sued the corporation and the municipality to recover from them for personal injuries alleged to have resulted from a fall caused by a defective sidewalk within the municipality, upon the theory that the defect was negligently created by the corporation and was negligently permitted to remain by the municipality after it knew or by the exercise of ordinary care should have known of its existence. Issue was joined by separate answers filed by the corporation and the municipality and by replies filed by Mrs. Dangelmeier. At the conclusion of the evidence offered for her the trial court peremptorily instructed the jury to find for the corporation, but overruled the motion of the municipality for a directed verdict. The jury found in her favor against the municipality in the sum of $2,-500.00, and judgment was entered accordingly. She has prosecuted an appeal from the judgment dismissing her petition as to the corporation, and the municipality has appealed from the judgment rendered in her favor against it.

These facts pertinent to the questions presented by the appeals appear: Mrs. Dangelmeier owns a lot facing Fourth avenue in the city of Dayton. In the summer and fall of 1924, she had a dwelling house erected thereon to use as a home. The portion of the street in front of her lot set apart for sidewalk purposes was 6 feet and 2 inches wide from the property line to the curb. Beginning at the property line a section thereof 4 feet and 8 inches wide was surfaced with brick paving, from the outer edge of which to the curb an 18 inch strip was left for a grass plot. The lot on which Mrs. Dangelmeier constructed her residence had theretofore been vacant and when she built it became necessary in order to supply her residence with gas and water to extend service lines from the mains in the street to it. The corporation which supplies water and natural gas to the residents of the municipality under franchise appears to have installed the service line for the water connection from the main in the street to a service box constructed by it just inside the curb and within the grass plot of the sidewalk in front of her lot, and to have installed the gas service line from the main in the street all the way into her residence. Stopcocks, by means of

which both the water and gas could be cut off, were installed side by side just inside the curb line. The water line to the residence from the service box at the curb line was installed by a contractor under employment of Mrs. Dangelmeier. She appears to have moved into her new residence about December 1, 1924. She testified that from the time she moved until the occasion when she was injured she frequently noticed that there was a hole or depression immediately surrounding the gas and water stopcocks in the grass plot which she described as being about 18 inches in diameter and approximately 8 inches deep. She testified also as to the rough and uneven condition of the brick surface of the sidewalk at that point; but that would seem to be immaterial here in view of the fact that she attributes her injuries to the depression. Other witnesses for her also testified to having seen the hole or depression at different times from about the time she moved into her new residence until the time of the injury. The testimony of Mrs. Dangelmeier alone sheds light on how she was injured. It appears that about nine o'clock on the night of December 31st she and her husband and two gentlemen friends left her home to attend a New Year's party. One of the gentlemen proceeded ahead to open the doors of the automobile parked at the curb. Mrs. Dangelmeier and the other came next, he holding her arm, and her husband came last, having been detained in turning out the lights and locking the door. Describing how she fell and was injured, she stated: "Well, as I was walking out there, of course to get in the machine, my foot slipped into this hole and threw me over in sort of a crampy condition." One of the bones of her right leg was broken near the ankle joint by the fall, and the remainder of her testimony was devoted to describing the pain and injury suffered by her as a result of it. Mr. Promnitz, who was walking with her at the time she fell, testified: "As we were about to go into the machine Mrs. Dangelmeier fell and laid there for awhile." He was asked if he knew what caused her to fall and stated: "Well, she fell; I don't know what caused her to fall; all I know is that she fell; I don't know whether she fell over anything; all I know is that she fell." He was unable to state where she was with reference to the automobile or the depression in the grass plot or at what place she was on the walk when she fell.

The motion for a directed verdict for the corporation was sustained at the close of her testimony, upon the theory that no evidence had been introduced tending to establish that the hole or depression in the grass plot was created by it. The case then proceeded against the city, and by its testimony these further facts were clearly established without contradiction: The corporation under its charter requiring it to supply water to the residents of the municipality, is required to do nothing more than to lay service lines from the water main in the street to the curb and there install the service box where connection with the plumbing to the residence is made. In supplying gas it is required to install the service line from the mains to the residence. The corporation finished its work on both the water and gas lines on October 17, 1924. The only service performed by it subsequent to that date was the installation of the water meter in the residence on November 14th. After installing the meter on the latter date its workmen opened the stopcock on the service line at the curb and then discovered that the contractor who had installed the plumbing had not connected the line to the residence with the service box at the curb, and notified Mrs. Dangelmeier of that fact. After that time the plumber who had installed the plumbing in her residence sent a workman to make the connection at the curb line. In doing that the workman had to dig a hole in the grass plot large enough to enable him to make the connection and some two or three feet deep at the exact place where all the testimony for Mrs. Dangelmeier established that the hole into which she fell was located. The corporation is not shown to have done any work or any excavating there or elsewhere after her plumber made that connection. The evidence from the record as a whole clearly establishes that any hole or depression about or near the stopcocks on the gas and water lines at the curb was caused by the excavating done by the plumber who was employed by Mrs. Dangelmeier herself or her contractor to connect the water system of her new residence with the corporation's service line. Under those facts, can it be said that the evidence herein is sufficient to make a case for her against either the corporation or the municipality?

In discussing the liability of a property owner for excavations made by a contractor on a lot adjacent to

a sidewalk, in Matheny v. Wolffs, 2 Duvall 137, it was said:

"The excavation up to the pavement rendered the street insecure and dangerous; consequently, a nuisance, unless properly protected by sufficient lights, guards, safeguards, or barricades to warn off passers. Proprietors have the legal right to excavate their lots for building purposes up to the very edge of the street, and perhaps to encroach on the street, and for this purpose have the right to use that part of the street for a reasonable time to the exclusion of the public; but this legal right must be exercised in a prudent, legal manner; and in populous cities the public interest and individual safety impose responsibilities from which such proprietors cannot escape; neither can they, by private contract, shift this responsibility upon undertakers or others. Hence the distinction, that, when an act must necessarily result in a nuisance, unless it be prevented by the proper precautionary measures, the proprietor is bound to the exercise of such measures, else he must answer in damages for injuries resulting to others from neglect thereof. No matter what may have been his contract with the undertakers, in such a case his responsibility does not depend on the relation of master and servant nor principal and agent, but results from others doing, at his instance, that which must needs result in a nuisance, unless prevented by the appropriate precautions."

City of Harrodsburg v. Vanarsdall, 148 Ky. 507, presented almost exactly the same state of facts we have here. There, in excavating to make the connection between the water company's lines and the water line to his residence, Vanarsdall and his plumbing contractor dug a hole in the grass plot of the sidewalk to find the cut-off located near the curb line. It was left unprotected overnight and a stranger to the transaction fell into it and was injured, sued the city and recovered. That was an action by the city against the property owner to recover the amount of the judgment, interest and cost it had so been compelled to pay. The quotation above from the Matheney case was adopted by the court as the governing rule, and it was held that the city could recover over. It is universally recognized as the rule that though a city

may be liable to one injured because of defects or obstructions in its streets, it may recover over against the one who created the defect or caused the obstruction. The reasons upon which that rule is founded were fully set forth in this court's recent opinion, in Middlesboro Home Telephone Company v. Louisville & Nashville Railroad Company, 214 Ky. 822. Under that rule, to which we have uniformly adhered, and for the reasons indicated in the opinions cited, if a stranger had fallen into the depression which Mrs. Dangelmeier testified caused her to fall, though he might have recovered from the municipality upon showing that it had knowledge of the unsafe condition or that it had existed long enough that in the exercise of reasonable care it should have discovered it, the municipality in turn could have recovered from Mrs. Dangelmeier the amount it may have so been compelled to pay in judgment, interest and cost, because she created and primarily was responsible for the defective condition. How then can it be said that if she was injured because of the defective condition which she created and for which she is primarily responsible she can recover from the municipality? Since the evidence herein clearly establishes that the hole or depression in the grass plot about the stopcocks on the water and gas lines leading to her residence resulted from the excavating done by her or her contractor who installed her plumbing and water line when he connected it to the corporation's service line, neither the corporation nor the municipality can be held responsible for the injury received by her which was caused, as she testified, by falling in that hole or depression. If we should assume that the trial court erroneously directed the jury to return a verdict for the corporation at the close of the evidence introduced for Mrs. Dangelmeier, it is unquestionably true that a peremptory instruction for it should have been given at the close of all the evidence. We think it equally clear for the reasons indicated that the trial court erred, at the conclusion of all the evidence, in failing to sustain the municipality's motion for a directed verdict.

For the reasons indicated the judgment herein is reversed on the appeal by the municipality from the judgment rendered in favor of Mrs. Dangelmeier against it, with direction that it be granted a new trial, and for

further proceedings consistent herewith; and the judgment herein dismissing her petition against the corporation is affirmed.