**CRIME FIGHTERS PATROL,**
**Appellant,**

**v.**

**Larry HILES, Gwendolyn Hiles, White Castle Systems, Inc. and Robert Cook, Appellees.**

**Larry HILES and Gwendolyn Hiles, Cross/Appellants,**

**v.**

**CRIME FIGHTERS PATROL, Cross/Appellee.**

**WHITE CASTLE SYSTEMS, INC., Cross/Appellant,**

**v.**

**CRIME FIGHTERS PATROL, Cross/Appellee.**

Nos. 86–SC–907–DG, 86–SC–1068–DG and 86–SC–1073–DG.

Supreme Court of Kentucky.

Nov. 25, 1987.

As Corrected Nov. 25, 1987.

Thomas R. Yocum, Benjamin, Sack, Yocum & Heather, Cincinnati, Ohio, for Crime Fighters Patrol.

Gregory N. Schabell, Florence, for Larry and Gwendolyn Hiles.

Thomas C. Smith, N. Jeffrey Blankenship, Covington, for White Castle Systems, Inc.

Larry Hicks, Florence, for Robert Cook.

LEIBSON, Justice.

The issue is whether the trial court, applying principles of indemnity, properly granted summary judgment in favor of the appellees.

Larry Hiles and Gwendolyn Hiles, his wife, filed suit against White Castle Systems, Inc. ("White Castle") alleging that on March 13, 1982, Larry Hiles was a customer in White Castle's business establishment when he was "viciously attacked and beaten by another guest." The assailant was Robert Cook. The gravamen of the claim against White Castle was that White Castle knew of the violent nature of the assailant prior to his assault and was negligent in failing to exercise reasonable care in preventing the assault. Larry Hiles sought damages for personal injuries, and Gwendolyn, his wife sought damages for loss of consortium.

White Castle filed a Third Party Complaint against the appellee, Crime Fighters Patrol, a security firm hired by White Castle to provide security guards. White Castle alleged these guards breached an agreement to maintain order at the restaurant. White Castle also filed a Third Party Complaint against the assailant, Robert Cook, seeking indemnity. Crime Fighters Patrol filed a cross-claim against Cook, also seeking indemnification.

Cook filed an Answer which included as a defense that appellee Hiles, for good and valuable consideration, had agreed to release and indemnify Cook against any further liability for this incident. The document in question was styled a "Partial Release" and attempted to reserve all claims against White Castle or other parties, but the indemnifying portion specified:

"I further hereby expressly stipulate and agree in consideration of the aforesaid payment to indemnify and hold forever harmless the said Robert Cook, ... against loss from any further claims ... that may hereafter at any time be made or brought against him by anyone for the purpose of enforcing a further claim for damages on account of my injuries sustained on or about March 13, 1982, specifically including any claims for contribution and/or indemnification."

This indemnifying agreement was the basis upon which the trial court granted summary judgment for White Castle Systems, Inc. and Crime Fighters Patrol. This Order is somewhat confusing for several reasons: (1) it was not clear whether the motion and order covered Gwendolyn Hiles' loss of consortium claim in addition to Larry Hiles' personal injury claim, although both have appealed from it; and (2) the indemnifying agreement to Cook was signed only by Larry Hiles and not by his wife, but the difference in her status, if any, has not been the subject of argument. We cannot decide from the record before us whether the summary judgment intended a final disposition of the loss of consortium claim.

However, it is abundantly clear from the record before us that the trial court has made a final disposition of appellant Larry Hiles' claim, applying three principles: (1) assuming all allegations against White Castle and Crime Fighters Patrol to be true, they were entitled to indemnity from Cook by operation of law; (2) Cook in turn had a binding contractual agreement from Hiles indemnifying Cook against any liability to White Castle and Crime Fighters Patrol; and (3) thus Hiles, himself, would be the responsible party for any judgment which might be rendered against White Castle or Crime Fighters Patrol.

■ The issue before us on Discretionary Review is whether this is a proper case for application of the indemnity principle. The summary judgment was not proper unless, conceding all relevant facts and allegations of the Complaint to be true, White Castle and/or Crime Fighters Patrol are entitled to complete indemnity from Hiles, so Hiles could take nothing on his

Complaint. *Paintsville Hosp. Co. v. Rose,* Ky., 683 S.W.2d 255 (1985).

The appellants have argued in the Court of Appeals, and in our Court, that White Castle and Crime Fighters Patrol were entitled to claim only contribution and not complete indemnity from Hiles; that White Castle, the named defendant, had "an affirmative duty to prevent the attack" on "its business patron," and that these parties were *"in pari delicto*—equal fault" with Cook. Both sides cite *Brown Hotel Company v. Pittsburgh Fuel Company,* 311 Ky. 396, 224 S.W.2d 165 (1949), as the leading Kentucky case on the subject. The Court of Appeals agreed with Hiles that summary judgment was improper, stating there was at least a jury issue as to "active negligence on the part of White Castle." We disagree, and reverse.

The issue in this case focuses upon the fundamentals of indemnity, and the use of that principle in *Brown Hotel Company v. Pittsburgh Fuel Company, supra.* In *Brown Hotel,* the claimant, Sizemore, had fallen over the cover to a coal chute located on the premises of the Brown Hotel which had been left unsecured by the Pittsburgh Fuel Company's employees. Sizemore sued Brown Hotel and Pittsburgh Fuel Company, and recovered against both, apportioned 50% each. Our Court held that, regardless of the apportionment, as a matter of law, Brown Hotel was entitled to complete indemnity from Pittsburgh Fuel Company for that portion of the verdict assessed against Brown Hotel because the parties were not *"in pari delicto."* We stated:

> "The primary, efficient and direct cause of the accident was the positive antecedent negligence of the fuel company's employee in failing to replace the manhole lid securely. This exposed the hotel company to liability. Its fault was a negative tort in failing to check upon the act of the coal delivery man and in failing to observe its affirmative duty to the public to see that the way was free of obstruction or the pitfall. Both were at fault but not the same fault toward the party injured." 224 S.W.2d at 167.

Our courts have experienced much difficulty in applying the principle enunciated in the *Brown Hotel* case. That difficulty stems from a mistaken analytical approach, proceeding from labels, or pigeonholes, rather than from the underlying equitable principles and the operative facts behind those labels. We commented on a problem of similar nature in *Gas Service Company v. City of London,* Ky., 687 S.W.2d 144, 148 (1985):

> "A variety of legalisms have been suggested as helpful.... These include duty/no duty and misfeasance/nonfeasance terminology.... These classifications ... in the long-run prove arbitrary pigeonholes for conclusions arrived at intuitively."

So, too, in this case, the parties have debated various opposing labels, "affirmative/negative," "active/passive," "misfeasance/nonfeasance," "omission/commission," "negligent/intentional," "primary/secondary." The problem is that these classifications are not in themselves definitive, but only conclusions which should be arrived at after analyzing the facts, and not intuitively. We cannot decide as an abstract proposition that White Castle's duty to protect its patrons should be labeled as affirmative rather than negative, or that its alleged negligence was active rather than passive. If anyone has doubt as to the confusion generated by reasoning backwards from labels in deciding whether the situation calls for complete indemnity or only contribution, they should read the conflicting opinions of able judges rendered in *Lexington Country Club v. Stevenson,* Ky., 390 S.W.2d 137 (1965).

The solution is the analysis of the facts using fundamental principles. To start with there are two different types of indemnity involved in this case: one is the obligation of indemnity assumed contractually, and the second is the obligation of indemnity imposed by law.

Appellants have not challenged the validity of the contractual obligation imposed upon Larry Hiles in the release which he executed to Robert Cook in consideration of the payment of $2,000. In this agree-

ment Hiles obligated himself to pay any future liability that might be incurred by Cook as a result of this incident, from any source, which includes any valid claim against Cook by the appellants, White Castle and Crime Fighters Patrol, existing by operation of law.

Thus the dispute hinges upon the second type of indemnity: Is this a situation where the law entitles White Castle and Crime Fighters Patrol to complete indemnity against Cook—or only to contribution which provides partial indemnity? The appellees have characterized this decision as turning on court administered "public policy," but this is a mischaracterization. This decision does not involve making policy but applying principles of equity. It is grounded in the equitable principle of restitution. *Eichberger v. Reid,* Ky., 728 S.W.2d 533 (1987). It is covered in the American Law Institute's *Restatement of Restitution,* 1937, more particularly "Chapter 3, Topic 3 "Discharge by One Person of Duty Also Owed by Another," §§ 76–102.

The basic rule is stated in § 76. It provides that a person who "has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity" unless "barred by the wrongful nature of his [own] conduct." This "bar" reflects another equitable principle characterized the "clean hands doctrine." *See* Black's Law Dictionary, 5th ed. Until the enactment of KRS 412.030 providing a statutory right to "contribution among wrongdoers," because of the clean hands doctrine a wrongdoer was barred from using the courts to make a claim for contribution against another wrongdoer, even though both caused the injury and one had paid the entire loss. But this principle did not bar a claim for indemnity on behalf of a party who was not *"in pari delicto*—equal fault." *Brown Hotel Company v. Pittsburgh Fuel Company, supra* at 166. Thus, we must decide whether the alleged negligent acts of White Castle and Crime Fighters Patrol should be considered *"in pari delicto "* with Cook's wrongful acts in causing Hiles' injury, in which case White Castle and Crime Fighters Patrol have only

a claim for statutory contribution or partial indemnity, extinguished only by half because of the indemnity agreement from Hiles to Cook, or whether White Castle and Crime Fighters Patrol have a claim over against Cook for complete indemnity extinguished completely by the promise of indemnity from Hiles to Cook.

When one studies the *Restatement (Second) of Torts,* 886(B), Indemnity Between Tortfeasors, it is clear that the labels referred to earlier in the Opinion do not define when complete indemnity applies, but instead describe fact situations illustrating "instances in which indemnity is granted." These characterizations are helpful, if not misapplied, but they do not in themselves define the problem.

> "In a number of instances there is general recognition that indemnity should be granted. Those instances that have been clearly established are listed in this Subsection and certain others for which the consensus is not so clear are described in Comment k." *Restatement (Second) of Torts,* § 886(B), Comment on Subsection (2).

The situation described in *Brown Hotel Company v. Pittsburgh Fuel Company, supra,* is but one of these instances, and thus the present case cannot be disposed of in a semantic argument as to whether the alleged negligence of White Castle and Crime Fighters Patrol should be characterized active or passive, or whether their duty to maintain the premises in a condition reasonably safe for the use of customers was, or was not, "an affirmative duty." Indeed, it cannot be disposed of simply on the basis of whether the appellants were negligent wrongdoers whereas Cook was an intentional wrongdoer, although these labels, and others, are helpful in describing the problem.

The basic allegation by Hiles against White Castle, and the fundamental fact that requires summary judgment, is that the appellants, White Castle and Crime Fighters Patrol, have at most failed to prevent an assault by Cook upon Hiles. They did not participate in making the assault. The issue must be resolved against the

appellees even if we accept the case as they put it in their Brief, "an affirmative duty on the part of a business establishment to protect its business invitee from attacks of another business patron." The fact pattern is analogous to the situation in *Brown Hotel* where the Pittsburgh Fuel Company left the lid of a manhole insecure and the Brown Hotel failed to maintain its premises free from this dangerous condition. It calls for complete indemnification.

The *Restatement of Restitution,* § 95, Person Responsible for a Dangerous Condition, explains as follows:

> "Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other, ... he is entitled to restitution from the other for expenditures properly made in the discharge of such liability...."

The *Notes* on the *Restatement of Restitution,* 1937, § 95, prepared by the Reporters, Seavey and Scott, use as one of the examples:

> "... where a person is under a duty to maintain premises in safe condition and another person by a negligent act causes them to be unsafe, with the result that a third person is damaged thereby...."

There are numerous cases applying this principle cited by Seavey and Scott, including *Dangelmeier v. Union Light, Heat & Power Co.,* 217 Ky. 186, 289 S.W. 378 (1926), in which a city held liable to a person injured because of a defect in the street was permitted to recover over against the company who created the defect.

The appellees have argued vehemently that the indemnity rule, if otherwise applicable, does not apply where one wrongdoer acts negligently and the other acts intentionally. But the application of this equitable principle does not turn on the status of the wrongdoer as negligent or intentional, because negligent and intentional conduct may, depending on the circumstances, be *in pari delicto.* Prosser, *Law of Torts,* 3d ed., p. 281; *Jacobs v. General Accident, Fire & Assurance Corp.,* 109 N.W.2d 462 (Wis.1961). Nevertheless, an assault is a prime example of intentional conduct, which, when juxtaposed against negligent conduct in failing to prevent the assault, presents a situation suitable for indemnity. The *Restatement of Restitution,* § 94, Person Having Duty to Protect Interests of Another, states as follows:

> "A person who has become liable in tort to another because of an injury caused by his negligent failure to protect the other's person or property from the tortious conduct of a third person is entitled to indemnity from such third person ... if [he] could have recovered from the third person for an injury so caused to himself...."

"Comment a" to this rule states that it is "applicable to situations in which, because of the relation of two parties, one of them is under a duty of protecting the other ... from harm." It gives as an example, "a carrier who is under a duty to protect passengers from assaults and acts of others." In such a case, "breach of duty to the injured person does not bar ... a right to restitution from ['the person doing the harm']."

This last illustration from the *Restatement of Restitution* seems squarely in point. A fortiori, if a carrier, who owes the highest duty of care to its passengers, is entitled to restitution from a person committing an assault upon a passenger, a business establishment would be so entitled in similar circumstances.[1]

Thus our Court expresses no "public policy" regarding whether indemnity should or should not apply in the present fact situation. However, we do reach the conclusion that as between White Castle and Crime Fighters Patrol, whose negligence, if any, consisted of failing to prevent the assault, and Cook, who perpetrated the assault, applying equitable principles the parties are not *in pari delicto;* White Castle and

---

1. We hasten to emphasize, once more, that equitable indemnity depends on the particular facts of the case, not classification. If the conduct of the person seeking indemnity amounts to joining in the misconduct, the parties may be *in pari delicto* regardless of who strikes the victim.

Crime Fighters Patrol would be entitled to complete indemnity from Cook. This is a case where there is no disagreement as to the material facts. The only dispute is the legal significance of those facts. A summary judgment is proper. *City of Louisville v. Gnagie*, Ky., 716 S.W.2d 236 (1986).

■ The claim of the appellee, Gwendolyn Hiles, for loss of consortium stands on different ground for a critical reason. Unlike Larry Hiles, Gwendolyn Hiles did *not* execute an agreement promising to indemnify Robert Cook from subsequent claims arising from his assault upon her husband. It is this agreement that makes Larry Hiles, ultimately responsible for any recovery against White Castle. White Castle and/or Crime Fighters Patrol cannot recover back against Gwendolyn Hiles under the indemnity agreement, so the fact that they may do so against her husband does not extinguish her claim. Even though, ultimately, Larry Hiles may be called upon for restitution for the amount awarded Gwendolyn Hiles on her loss of consortium claim, this does not destroy her right to recover from White Castle in the first instance. The spouse's right to loss of consortium is a separate claim, not dependant on her husband's ability to recover in those situations where the claim of the injured spouse is barred for some reason other than liability. *Floyd v. Gray*, Ky., 657 S.W.2d 936 (1983).

Therefore, the Court of Appeals' Opinion is affirmed as to Gwendolyn Hiles, and her case is remanded to the trial court for further proceedings consistent with this Opinion. However, as to Larry Hiles, the Court of Appeals' Opinion is reversed and the trial court's summary judgment is affirmed.

STEPHENS, C.J., and GANT, LAMBERT and WINTERSHEIMER, JJ., concur.

STEPHENSON and VANCE, JJ., concur in the Opinion as to Larry Hiles only.