DeSTOCK # 14, INC., d/b/a Applebee's Neighborhood Grill & Bar, Appellant,

v.

James LOGSDON; Heather Alvey; and Linda J. Reid, Mother and Next Friend of Christopher Reid, Appellees.

James Logsdon, Appellant,

v.

Heather Alvey; Linda J. Reid, Mother and Next Friend of Christopher Reid, A Minor; and Destock # 14, Inc., d/b/a Applebee's Neighborhood Grill & Bar, Appellees.

Nos. 97–SC–1072–DG, 97–SC–1086–DG.

Supreme Court of Kentucky.

June 17, 1999.

Gorman Bradley, Jr., Bradley & Freed, PSC, Paducah, KY, Jonathan Freed, Bradley and Freed, PSC, Paducah, KY, Daniel S. Stratemeyer, Boehl, Stopher & Graves, Paducah, for Destock # 14, Inc., d/b/a Applebee's Neighborhood Grill & Bar.

E. Frederick Straub, Jr., Whitlow, Roberts, Houston & Straub, Paducah, KY, for James Logsdon.

James W. Owens, Donald R. Green, Jr., James W. Owens, Chartered, Paducah, KY, for Heather Alvey and Linda J. Reid, Mother and Next Friend of Christopher Reid, A Minor.

COOPER, Justice.

While stopped at a red light, an automobile operated by Christopher Reid and occupied by Heather Alvey was struck in the rear by an automobile operated by James Logsdon. The collision pushed Reid's vehicle forward, causing it to collide with a third vehicle which was also stopped at the red light. Reid and Alvey both were injured as a result of the collision and brought this action in the McCracken Circuit Court seeking damages against Logsdon. They also sued DeStock # 14, Inc., d/b/a Applebee's Neighborhood Grill & Bar, asserting liability under Kentucky's dram shop statute, KRS 413 .241. DeStock cross-claimed against Logsdon for indemnity for any sums which it might be required to pay in damages to Reid and/or Alvey.

Logsdon testified in his discovery deposition that prior to the accident he had purchased and consumed four to six glasses of draft beer at Applebee's, each glass containing approximately ten to twelve ounces of beer. He had then consumed one non-alcoholic beer at another bar before purchasing a sandwich and a soft drink at a drive-through restaurant. Ac-

cording to Logsdon, the accident occurred when he attempted to retrieve the sandwich from the passenger seat of his vehicle and failed to observe that traffic was stopped in front of him. A breathalyzer test performed after the accident measured Logsdon's blood alcohol concentration at 0.235%. In Kentucky, a person with a blood alcohol concentration of 0.10% or more is prohibited from operating a motor vehicle. KRS 189A.010(1)(a).

Logsdon was the named insured of a policy of automobile insurance providing liability coverage of $100,000.00 per person/$300,000.00 per accident. Upon completion of discovery, the claims of Reid and Alvey against Logsdon were settled by payment of $6,000.00 to Reid and $45,000.00 to Alvey. Subsequently, summary judgments were entered dismissing the claims of Reid and Alvey against DeStock, as well as the cross claim of DeStock against Logsdon for indemnity. Reid and Alvey appealed the dismissal of their claims against DeStock, and DeStock filed a precautionary appeal of the dismissal of its cross claim against Logsdon. The Court of Appeals reversed both summary judgments and remanded the case to the McCracken Circuit Court for further proceedings. Because this case involves an issue of first impression, *i.e.*, interpretation of the meaning and effect of KRS 413.241, we granted discretionary review.

## I.

Prior to 1988, dram shop liability in Kentucky had its basis in the common law. *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, Ky., 736 S.W.2d 328 (1987).

[W]here there is evidence from which it can be reasonably inferred that the tavern keeper knows or should know that he is serving "a person actually or apparently under the influence of alcoholic beverages (KRS 244.080(2))" and that there is a reasonable likelihood that upon leaving the tavern that person will operate a motor vehicle, the elements necessary to establish a negligence action are proved.

*Id.* at 334. *See also Pike v. George*, Ky., 434 S.W.2d 626 (1968), which had previously created dram shop liability with respect to a sale or service of intoxicating beverages to a minor. The appeals in both *Grayson* and *Pike* were from summary dismissals holding that a claim against a dram shop for selling or serving intoxicating beverages to one who subsequently injures another did not state a cause of action. Thus, neither decision reached the issue of the nature of the dram shop's potential liability, *i.e.*, whether the liability of the drunken driver is imputed to the dram shop, as when a motor vehicle is negligently entrusted to one known to be intoxicated, *Owensboro Undertaking & Livery Ass'n v. Henderson*, 273 Ky. 112, 115 S.W.2d 563 (1938); or whether the dram shop's negligence is deemed concurrent with that of the drunken driver so that their respective liabilities are subject to apportionment, KRS 411.182, *Hilen v. Hays*, Ky., 673 S.W.2d 713 (1984); or whether the drunken driver is deemed primarily liable and the dram shop only secondarily liable, as opposed to being in pari delicto, which affects any claim for indemnity. *Middlesboro Home Tel. Co. v. Louisville & N.R. Co.*, 214 Ky. 822, 284 S.W. 104, 106 (1926). However, *Grayson* did contain some strongly worded *dictum* which might have affected those issues had they been reached:

By continuing to supply alcohol to a person who is noticeably impaired when the seller knows or should know from the attendant circumstances that the buyer is likely to exit the establishment behind the wheel of an automobile, the seller is as much a wrongdoer as the buyer, often times more so because at least the seller is a sober contributor to the intoxication process.

*Grayson, supra*, at 332.

At the time *Grayson* was decided, both California and South Dakota had abolished dram shop liability by statute. Cal.Bus.

Prof.Code § 25602 (1978 Cal.Stat., ch. 929, p. 2903, § 1), specifically abrogating the common law rule of dram shop liability created in *Coulter v. Superior Court,* 21 Cal.3d 144, 145 Cal.Rptr. 534, 577 P.2d 669 (1978), *Bernhard v. Harrah's Club,* 16 Cal.3d 313, 128 Cal.Rptr. 215, 546 P.2d 719 (1976), *cert. denied,* 429 U.S. 859, 97 S.Ct. 159, 50 L.Ed.2d 136 (1976), and *Vesely v. Sager,* 5 Cal.3d 153, 95 Cal.Rptr. 623, 486 P.2d 151 (1971); S.D. Codified Laws Ann. §§ 35–11–1, 35–4–78 (1985 S.D.Laws, ch. 295, §§ 1, 2), specifically abrogating the common law rule of dram shop liability created in *Walz v. City of Hudson,* 327 N.W.2d 120 (S.D.1982). Louisiana and Florida had enacted statutes restricting dram shop liability. La.Rev.Stat.Ann. § 9.2800.1 (1986 La. Acts, No. 18, § 1) (limiting liability to sale or service of intoxicating beverages to a minor); Fla.Stat. Ann. § 768.125 (1980 Fla.Laws, ch. 80–37, § 1) (limiting liability to sale or service of intoxicating beverages to a minor or to a person known to be habitually addicted to alcoholic beverages). One year after *Grayson* was rendered, Georgia enacted a statute similar to the Florida statute, limiting dram shop liability to sale or service to a minor or to a person "in a state of noticeable intoxication, knowing that such person will soon be driving a motor vehicle . . . ." Ga.Code Ann. § 51–1–40 (1988 Ga.Laws, p. 1692, § 1).

## II.

Also one year after *Grayson* was rendered, our legislature enacted KRS 413.241 (1988 Ky. Acts, ch. 434, § 1) as follows:

(1) The General Assembly finds and declares that the consumption of intoxicating beverages, rather than the serving, furnishing or sale of such beverages, is the proximate cause of any injury, including death and property damage,

inflicted by an intoxicated person upon himself or another person.

(2) Any other law to the contrary notwithstanding, no person holding a permit under KRS 243.010,[1] 243.030, 243.040, 243.050, nor any agent, servant, or employe of such a person, who sells or serves intoxicating beverages to a person over the age for the lawful purchase thereof, shall be liable to such person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises including but not limited to wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were sold or served, *unless a reasonable person under the same or similar circumstances should know that the person served is already intoxicated at the time of serving.* (Emphasis added.)

(3) The intoxicated person shall be primarily liable with respect to injuries suffered by third persons.

(4) The limitation of liability provided by this section shall not apply to any person who causes or contributes to the consumption of alcoholic beverages by force or by falsely representing that a beverage contains no alcohol.

(5) This section shall not apply to civil actions filed prior to July 15, 1988.

As introduced in the 1988 General Assembly, House Bill 570, which would become KRS 413.241, was almost identical to the Louisiana dram shop statute cited *supra.* See 1988 Ky. House Journ. 1050–51. The legislative declaration with respect to proximate cause in KRS 413.241(1) is also found in section A of the Louisiana statute, as well as in the South Dakota and Georgia dram shop statutes cited *supra.* Also like the Louisiana statute, the initial version of House Bill 570 did not contain the last clause in section (2); thus, the bill would have abrogated *Grayson, supra,* to the

---

1. This statutory reference was deleted from the statute during the 1998 legislative session.

1998 Ky. Acts, ch. 121, § 36.

extent that *Grayson* extended dram shop liability to the sale or service of intoxicating beverages to a person already intoxicated. Subsequent amendments to House Bill 570 culminated in the inclusion of the last clause of section (2), which effectively reinstated the holding in *Grayson*.[2] The "proximate cause" declaration in section (1), and the "primarily liable" language in section (3) remained essentially intact.[3]

### III.

 Reid and Alvey interpret the addition of the amendatory language to section (2) of House Bill 570 as a legislative intent to emasculate sections (1) and (3), because those sections purport to place liability for damages inflicted by a drunken driver solely on the driver, whereas section (2), as amended, extends liability to the dram shop. In fact, sections (1) and (3) could never have been intended to completely immunize dram shops from liability; for even the original version of House Bill 570 did not purport to abrogate dram shop liability with respect to a sale or service to a minor. There is no reason to assume that the legislature intended one result with respect to a sale or service to a minor and a different result with respect to a sale or service to an intoxicated person.

 Reid and Alvey next assert that sections (1) and (3) are inherently inconsistent, thus ambiguous, because section (1) declares the drunken driver's negligence to be "the proximate cause" of their injuries, while section (3) declares the drunken driver to be only "primarily liable" for

their injuries. Any apparent conflict between sections of the same statute should be harmonized if possible so as to give effect to both; and, in so doing, the statute should be construed so that no part of it is meaningless or ineffectual. *Combs v. Hubb Coal Corp.*, Ky., 934 S.W.2d 250, 252 (1996); *see also Commonwealth v. Halsell*, Ky., 934 S.W.2d 552, 555 (1996); *Ledford v. Faulkner*, Ky., 661 S.W.2d 475, 476 (1983). There is a distinction between causation and liability. Section (1) of the statute declares that the sale or service of intoxicating beverages to Logsdon by DeStock's employees was not a proximate cause of Reid's and Alvey's injuries. However, section (2) imputes Logsdon's liability to DeStock, if DeStock's employees sold or served intoxicating beverages to Logsdon when a reasonable person under the same or similar circumstances should have known that he was already intoxicated (and, of course, if that fact was a substantial factor in causing him to be intoxicated at the time of the accident, and if his intoxication was a substantial factor in causing the accident). If so, both DeStock and Logsdon are liable for the injuries sustained by Reid and Alvey; but, pursuant to section (3), Logsdon is primarily liable and DeStock only secondarily liable. Thus, KRS 413.241 dispelled the suggestion in *Grayson* that the dram shop and the drunken driver ought to be considered in pari delicto.[4]

 Since Logsdon and DeStock were not in pari delicto and Logsdon is primarily liable and DeStock only second-

---

2. A house floor amendment to what became section (2) added the language "unless the person is or should be aware that the person served is already intoxicated." 1988 Ky. House Journ. 1343. A senate floor amendment substituted the language which is now the last clause of section (2). 1988 Ky. Senate Journ. 1545.

3. In the original version of House Bill 570, what is now section (3) provided, "The intoxicated person and the insurer of the intoxicated person shall be primarily liable...." 1988 Ky. House Journ. 1050–51. The language

"and the insurer of the intoxicated person" was deleted by a senate floor amendment immediately prior to passage. 1988 Ky. Senate Journ. 1690.

4. Interestingly, Justice Leibson, who authored *Grayson*, used a subsequent dissenting opinion in an unrelated case, *Schilling v. Schoenle*, Ky., 782 S.W.2d 630 (1990), to opine that Grayson required an identical conclusion, *i.e.*, "the dram shop owner may be additionally liable but the drunk driver is still primarily responsible." *Id.* at 634.

arily liable to Reid and Alvey, DeStock will be entitled to indemnity against Logsdon for any sums it is required to pay in damages to them. *Lexington Country Club v. Stevenson*, Ky., 390 S.W.2d 137, 143 (1965). "[O]ne wrongdoer less culpable than another may recover over although the wrong of each contributed to bring about the injury." *Middlesboro Home Tel. Co. v. Louisville & N.R. Co.*, *supra*, 284 S.W. at 105. Unlike the situation presented in *Crime Fighters Patrol v. Hiles*, Ky., 740 S.W.2d 936 (1987), we are not required in this case to address the policy issue of whether the dram shop ought to be deemed in pari delicto with the drunken driver or whether it ought to be only secondarily liable, because that policy issue was decided by the legislature when it enacted KRS 413.241.

## IV.

■ This conclusion nullifies the basis for Logsdon's summary judgment against DeStock, *i.e.*, that the respective liabilities of the dram shop and the drunken driver must be apportioned in accordance with KRS 411.182 and *Hilen v. Hays, supra*, and that Logsdon's liability is thus limited to the sums he paid to settle Reid's and Alvey's claims against him. *See Dix & Associates Pipeline Contractors, Inc. v. Key*, Ky., 799 S.W.2d 24, 30 (1990). Logsdon argues that KRS 411.182(1) requires apportionment in "all tort actions." However, KRS 411.182(2) and (3) and *Hilen v. Hays, supra*, at 720, also specify that damages must be apportioned according to the parties' respective percentages of fault, which are determined by considering "both the nature of the conduct of each party and *the causal relation between the conduct and the damages claimed.*" (Emphasis added.) Absent causation, there can be no comparative fault.

> [C]ausation ... is a necessary condition precedent to consideration of a person's fault—*i.e.*, the fault must have "proximately caus[ed] or contribut[ed]" to the claimant's injuries ...—once causation

is found the trier of fact must determine and apportion "the relative degrees of fault" of all parties and nonparties.

*Zuern v. Ford Motor Co.*, 188 Ariz. 486, 937 P.2d 676, 681–82 (1997) (citing *inter alia* W.L. Prosser, *Comparative Negligence*, 51 Mich.L.Rev. 465, 481 (1953)).

■ Since it has been legislatively determined in KRS 413.241(1) that DeStock's negligence did not proximately cause Reid's and Alvey's injuries, comparative fault and apportionment are inapplicable to a determination of DeStock's liability. As far as Reid and Alvey are concerned, KRS 413.241(2) imputes Logsdon's liability to DeStock and recovery can be had against either or both. However, as between Logsdon and DeStock, KRS 413.241(3) declares Logsdon to be primarily liable and DeStock only secondarily liable, which entitles DeStock to the remedy of indemnity. We note that *Dix & Associates, supra*, did not involve an issue of primary and secondary liability and was a claim for contribution, not indemnity.

■ Logsdon argues that the language of KRS 411.182(1), which specifically requires apportionment "in all tort actions" should be given priority over the language of KRS 413.241(1) and (3), which implicates indemnity in favor of the dram shop against the drunken driver. He analogizes *Caterpillar, Inc. v. Brock*, Ky., 915 S.W.2d 751 (1996), *cert. denied*, 520 U.S. 1166, 117 S.Ct. 1428, 137 L.Ed.2d 537 (1997), in which we held that KRS 411.182 negated the contributory negligence provision in the products liability act, KRS 411.320(3). However, KRS 411.182(1) specifically provides that apportionment applies to products liability actions. We held in *Caterpillar* that this language impliedly repealed the contributory negligence provision in KRS 411.320(3), a statute which pre-existed the enactment of KRS 411.182. That holding was in accord with the rule of construction that if two statutes involving the same subject matter are in irreconcilable conflict, the later statute controls.

*Butcher v. Adams,* 310 Ky. 205, 220 S.W.2d 398 (1949).

 The two statutes at issue here both were enacted during the 1988 regular session of the General Assembly and both took effect on the same date, July 15, 1988. KRS 411.182 addresses tort actions in general; KRS 413.241 addresses actions against dram shops in particular. Statutes enacted at the same session of the legislature are entitled to equal dignity and should be construed so as to give effect to both. *Sumpter v. Burchett,* 304 Ky. 858, 202 S.W.2d 735 (1947). When two statutes deal with the same subject matter, one in a broad, general way and the other specifically, the specific statute prevails. *Land v. Newsome,* Ky., 614 S.W.2d 948 (1981). Applying these rules of construction, we conclude that KRS 411.182 does not require apportionment of liability between the drunken driver and the dram shop in an action brought under KRS 413.241. (Of course, evidence of fault on the part of Reid would require an apportionment of liability between him and Logsdon, and DeStock's liability would be limited to the percentage of causation attributable to Logsdon.)

### V.

 The summary judgment entered in favor of DeStock was premised upon the theory that the release by Reid and Alvey of Logsdon, who was primarily liable, effectuated a concomitant release of DeStock, which was only secondarily liable. DeStock cites *Copeland v. Humana of Kentucky, Inc.,* Ky.App., 769 S.W.2d 67 (1989) in support of this proposition. However, the secondarily liable defendant in *Copeland* was not guilty of any independent wrongdoing, but was vicariously liable for the wrongdoer's negligence only because of an agency relationship. DeStock's liability is premised not only on Logsdon's negligence, but also on its own alleged independent negligent act. Although it can be held liable only if Logsdon's negligence caused Reid's and/or Alvey's injuries, DeStock is regarded as a separate tortfeasor because its liability also depends upon proof that its employees were independently negligent in selling or serving intoxicating beverages to Logsdon. Thus, Reid's and Alvey's release of Logsdon did not effect a release of DeStock. *Richardson v. Eastland, Inc.,* Ky., 660 S.W.2d 7, 8 (1983).

### VI.

 Logsdon complains that if DeStock is entitled to indemnity against him, he will lose the benefit of his settlements with Reid and Alvey. Perhaps; but he entered into those settlements with knowledge of the existence of DeStock's cross claim for indemnity. Except for the amounts paid, the terms of the settlements are not found in this record, so it is unknown whether the settlement documents include the standard "hold harmless" clause contained in the agreement considered in *Crime Fighters Patrol v. Hiles, supra,* at 937. If so, Reid and Alvey are precluded from any recovery against DeStock; for DeStock would be entitled to indemnity against Logsdon for the amount of that recovery, and Reid and Alvey would be required to hold Logsdon harmless to the extent of the indemnification. Id. If not, Reid and Alvey can proceed to trial on their claims against DeStock in accordance with the principles set forth in this opinion. Of course, DeStock will be entitled to credit against any judgments in favor of Reid or Alvey for the amounts which each respectively received in settlement from Logsdon. *Burke Enterprises, Inc. v. Mitchell,* Ky., 700 S.W.2d 789, 794–96 (1985); *Daniel v. Turner,* Ky., 320 S.W.2d 135 (1959). DeStock will then be entitled to indemnity against Logsdon for any sums it is required to pay in damages to Reid and/or Alvey.

### VII.

Accordingly, the decision of the Court of Appeals is affirmed insofar as it reversed the summary judgments entered in this

case, and this action is remanded to the McCracken Circuit Court with these directions:

1. If the settlement documents executed by Reid and Alvey contain a hold harmless clause in favor of Logsdon as in *Crime Fighters Patrol v. Hiles, supra,* the summary judgment in favor of DeStock shall be reinstated and the action dismissed.

2. If not, Reid and Alvey can proceed to a trial against DeStock at which the jury will be instructed to find DeStock liable if (1) its employees sold or served intoxicating beverages to Logsdon when a reasonable person under the same or similar circumstances should have known that Logsdon was already intoxicated, (2) such was a substantial factor in causing Logsdon to be intoxicated at the time of the accident, if he was, and (3) Logsdon's intoxication was a substantial factor in causing Reid's and Alvey's injuries. Since DeStock's liability is imputed from Logsdon, if there is evidence of contributory fault on the part of Reid, DeStock's liability shall be determined by the percentage of causation attributable to Logsdon.

3. The sums received by Reid and Alvey in settlement of their claims against Logsdon shall be credited respectively against any judgment awarded to either against DeStock.

4. DeStock shall be entitled to a judgment against Logsdon for indemnity for the amount of any judgment rendered against it in favor of Reid and/or Alvey.

LAMBERT, C.J.; JOHNSTONE, KELLER, STUMBO, WINTERSHEIMER, JJ., and Special Justice W. DAVID DENTON, concur.

GRAVES, J., not sitting.