**Walter M. BUTT and Karen Petigo, Co-Administrators of the Estates of Brian C. Butt and Michael A. Butt; Stephanie A. McCauley, as Mother Next Friend and Conservator for Maggie Elizabeth Ann McCauley; Ashley N. Hazelwood, as Mother Next Friend and Conservator for Kile A. Green, and Bruce E. Butt, Appellants**

v.

**INDEPENDENCE CLUB VENTURE, LTD. d/b/a the Electric Cowboy, Appellee**

NO. 2013–CA–001400–MR

Court of Appeals of Kentucky.

RENDERED: DECEMBER 19, 2014; 10:00 A.M.

BRIEF FOR APPELLANT: John M. Longmeyer, Joseph M. Longmeyer, Louisville, Kentucky

ORAL ARGUMENT FOR APPELLANT: Joseph M. Longmeyer, Louisville, Kentucky

BRIEF AND ORAL ARGUMENT FOR APPELLEE: David C. Travis, Louisville, Kentucky

BEFORE: CLAYTON, DIXON AND JONES, JUDGES.

## OPINION

DIXON, JUDGE:

Appellants, Walter M. Butt and Karen Petigo, co-administrators of the estates of Brian C. Butt and Michael A. Butt; Stephanie A. McCauley, as mother next friend and conservator for Maggie Elizabeth Ann McCauley; Ashley N. Hazelwood as mother, next friend and conservator for Kile A. Green; and Bruce E. Butt, appeal from an order of the Jefferson Circuit Court granting summary judgment in favor of Appellee, Independence Club Venture, Ltd. d/b/a The Electric Cowboy, and dismissing their cause of action for violation of Kentucky's Dram Shop Act. Appellants also appeal the trial court's denial of their motion to set aside an interlocutory agreed order dismissing Appellants' claim for punitive damages following an intervening change in Kentucky law.

On the morning of February 21, 2010, Bruce Butt, Michael Butt, Brian Butt and Derek Chism were passengers in a vehicle driven by Nathan King. After leaving Appellee's establishment, the Electric Cowboy, King's vehicle was involved in a serious accident on Dixie Highway, wherein Michael Butt, Brian Butt and Derek Chism were killed and Bruce Butt was injured. King was intoxicated at the time of the accident.

On May 10, 2010, Appellants entered into a settlement agreement with King, his family, and his insurer, Motorists Mutual Insurance Companies. The following language was included in each "Release of All Claims" document:

It is not the intent of this Release to preclude a cause of action by [Appellant] against other potentially responsible parties, such as liquor stores, restaurants, bars, and the like which [Appellant] may have visited on the evening in question. It is the intent of this Release that any and all claims have been released against the Kings and any and all relatives, as well as Motorists Mutual Insurance Companies and any of its related companies.

. . .

I agree and understand that it is the objective of the parties released herein and their representatives that they be released from any and all liability arising out of the accident referred to herein and any and all claims which have been or may be asserted herein and their representatives arising out of or originating from the accident referred to herein. Therefore, I hereby covenant and agree to defend, hold harmless, and to indemnify the parties released herein and their representatives from any and all claims, liens, causes of action, demands or suits of any kind which may have been brought because of the accident referred to herein or for any amount that they or their representatives may be hereafter compelled to pay on account of any claims arising out of the accident referred to herein.

On February 24, 2011, Appellants filed the instant action in the Jefferson Circuit Court against Appellee alleging that it vio-

lated Kentucky's Dram Shop Act by negligently serving alcohol to King on the evening of February 28, 2010, and that said negligence was a substantial factor in causing the accident. Appellee thereafter moved for summary judgment on the grounds that pursuant to the Kentucky Supreme Court's decision in *DeStock # 14 v. Logsdon,* 993 S.W.2d 952 (Ky.1999), the "hold harmless" provision in the release document effectively nullified all dram shop liability. By order entered July 18, 2013, the trial court granted Appellee's motion, concluding that "Plaintiffs are precluded from any recovery against Electric Cowboy because it would then be entitled to indemnity against King for the amount of any recovery, and Plaintiffs would be required to hold King harmless to the extent of the indemnification." Appellants thereafter appealed to this Court.

Our standard of review on appeal of a summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.App.1996). Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." CR 56.03. The trial court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991). Summary judgment is proper only "where the movant shows that the adverse party could not prevail under any circumstances." *Id.*

Appellants first argue that the trial court erred in determining that the hold harmless language in the release precluded a cause of action against Appellee. Appellants point out that the language of the release document specifically states, "It is not the intent of this Release to preclude a cause of action ..." with the word "Release" being capitalized, thus indicating that "Release" is the title of the document and the intent statement applies to it as a whole. As such, Appellants contend that "[t]he language of all of the Releases specifically and unequivocally excludes Nathan King, his Family and Motorist Mutual Insurance Company from any protection under the subsequent "hold harmless" provision, for any claims against liquor stores, restaurants or bars." In other words, Appellants assert that because the statement of intent nullifies the "hold harmless" provision with respect to any claim against Appellee, the trial court erred in relying on the *DeStock* decision. We must disagree.

Contract interpretation, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to *de novo* review. *Morganfield Nat'l Bank v. Damien Elder & Sons,* 836 S.W.2d 893, 895 (Ky.1992); *see also Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.,* 94 S.W.3d 381, 385 (Ky.App.2002). "The scope of a release is determined primarily by the intent of the parties as expressed in the release instrument...." *Ohio Casualty Insurance Co. v. Ruschell,* 834 S.W.2d 166, 169 (Ky.1992) (Citation omitted). When there is no ambiguity, the Court is only to look at the four corners of the document to determine the intent. *Abney v. Nationwide Mutual Insurance Company,* 215 S.W.3d 699, 703 (Ky.2006). Further, "[t]he fact that one party may have intended different results ... is insufficient to construe a contract at vari-

ance with its plain and unambiguous terms." *Cantrell Supply, Inc.*, 94 S.W.3d at 385.

The trial court herein relied on our Supreme Court's decision in *DeStock # 14 v. Logsdon*, 993 S.W.2d 952 (Ky.1999), wherein the plaintiffs were injured in an automobile accident with a drunk driver. The plaintiffs sued both the driver (Logsdon) and DeStock d/b/a Applebee's Neighborhood Bar and Grill which they alleged continued to serve Logsdon alcohol after he became obviously intoxicated. After the plaintiffs entered into a settlement agreement and release with Logsdon, the trial court granted summary judgment to DeStock, "premised upon the theory that the release by [plaintiffs] of Logsdon, who was primarily liable, effectuated a concomitant release of DeStock, which was only secondarily liable." *Id.* at 959.

On appeal, our Supreme Court examined the interplay between causation and liability under Kentucky's Dram Shop Act, KRS 413.241, which provides, in relevant part:

(1) The General Assembly finds and declares that the consumption of intoxicating beverages, rather than the serving, furnishing, or sale of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or another person.

(2) Any other law to the contrary notwithstanding, no person holding a permit under KRS Chapters 241 to 244, nor any agent, servant, or employee of the person, who sells or serves intoxicating beverages to a person over the age for the lawful purchase thereof, shall be liable to that person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises including but not limited to wrongful death and property damage,

because of the intoxication of the person to whom the intoxicating beverages were sold or served, unless a reasonable person under the same or similar circumstances should know that the person served is already intoxicated at the time of serving.

(3) The intoxicated person shall be primarily liable with respect to injuries suffered by third persons.

The *DeStock* Court concluded that under subsection (1), it is the actions of the intoxicated tortfeasor, and not the dram shop's service of alcohol, that are the proximate cause of injury. Liability is imputed to the dram shop for injuries to a third person under subsection (2) only if the dram shop's employees sold or served intoxicating beverages to a person when a reasonable person under the same or similar circumstances would have known that he or she is already intoxicated. *DeStock*, 993 S.W.2d at 957. Finally, the Court noted that pursuant to subsection (3), the tortfeasor remains primarily liable for injuries while the dram shop is secondarily liable with a right of indemnity against the tortfeasor. *Id.* In other words, "the dram shop and the tortfeasor are not concurrently negligent, but instead have committed two separate and independently tortious acts. Liability is imposed on the intoxicated tortfeasor for his actions in injuring the plaintiff, while liability is imposed upon the dram shop for the entirely separate and 'independently negligent' act of serving alcohol to the intoxicated tortfeasor before the accident." *Jackson v. Tullar*, 285 S.W.3d 290, 295 (Ky.App.2007) (*Quoting DeStock* at 959).

As it specifically pertains to the matter herein, the *DeStock* Court further held:

Since Logsdon and DeStock were not in *pari delicto* and Logsdon is primarily liable and DeStock only secondarily liable to Reid and Alvey, DeStock will be

entitled to indemnity against Logsdon for any sums it is required to pay in damages to them. *Lexington Country Club v. Stevenson,* Ky., 390 S.W.2d 137, 143 (1965)....

...

Logsdon complains that if DeStock is entitled to indemnity against him, he will lose the benefit of his settlements with Reid and Alvey. Perhaps; but he entered into those settlements with knowledge of the existence of DeStock's cross claim for indemnity. Except for the amounts paid, **the terms of the settlements are not found in this record, so it is unknown whether the settlement documents include the standard "hold harmless" clause contained in the agreement considered in** *Crime Fighters Patrol v. Hiles, supra,* **at 937. If so, Reid and Alvey are precluded from any recovery against DeStock; for DeStock would be entitled to indemnity against Logsdon for the amount of that recovery, and Reid and Alvey would be required to hold Logsdon harmless to the extent of the indemnification.** *Id.* If not, Reid and Alvey can proceed to trial on their claims against DeStock in accordance with the principles set forth in this opinion. Of course, DeStock will be entitled to credit against any judgments in favor of Reid or Alvey for the amounts which each respectively received in settlement from Logsdon. *Burke Enterprises, Inc. v. Mitchell,* Ky., 700 S.W.2d 789, 794–96 (1985); *Daniel v. Turner,* Ky., 320 S.W.2d 135 (1959). DeStock will then be entitled to indemnity against Logsdon for any sums it is required to pay in damages to Reid and/or Alvey. (Emphasis added)

*DeStock* at 957–59.

The *DeStock* Court, in making the observation that the existence of a hold harmless clause in their release of Logsdon would preclude plaintiffs from any recovery against DeStock, cited to the decision in *Crime Fighters Patrol v. Hiles,* 740 S.W.2d 936 (Ky.1987). In *Hiles,* the plaintiff was assaulted while visiting a White Castle restaurant. The plaintiff settled with the assailant and thereafter filed suit against White Castle, who in turn filed a third-party complaint against its security firm, Crime Fighters Patrol. In addition, both White Castle and Crime Fighters Patrol filed actions against the assailant seeking indemnity. Based upon "hold harmless" language contained in settlement agreement between the plaintiff and assailant, the trial court granted summary judgment in favor of White Castle and Crime Fighters Patrol. On appeal, the Supreme Court held that because the assailant, White Castle and Crime Fighters Patrol were not *in pari delicto,* the latter two would have been entitled to complete indemnity from the assailant. *Id.* at 940–41. Further, because the assailant had a contractual agreement from the plaintiff indemnifying him against any further liability, the plaintiff himself would have been the responsible party for any judgment against White Castle or Crime Fighters Patrol. *Id.* This is referred to as the "circuity of litigation" that courts have sought to avoid. *Zetter v. Griffith Aviation, Inc.,* 435 F.Supp.2d 622, 631 (E.D.Ky. 2006) (*Citing Copeland v. Humana of Kentucky, Inc.,* 769 S.W.2d 67, 69 (Ky.App. 1989)) (internal citations omitted).

Appellants seek to convince this Court that under the release documents, "[t]he Kings and Motorist Mutual are indemnified against medical liens, Medicare claims, and any claim imaginable other than this one. That is the stated intent of the document and that is how each Release should be applied." Unfortunately, we are of the opinion that a plain reading of the release

language does not support Appellant's interpretation. The release language is not ambiguous. Looking only at the four corners of the documents, it is clear that Appellants intended to preserve their right to pursue a claim against Appellee. However, it is also clear that Appellants agreed to hold harmless and indemnify the released parties from "any and all claims, liens, causes of action, demands or suits of any kind which may have been brought because of the accident referred to herein...." Despite Appellants' argument to the contrary, there simply is no limiting language in the release excluding indemnification for a dram shop claim.

We are cognizant of the effect that this opinion will have on Appellants. Nevertheless, we cannot construe the release document in variance to its plain and unambiguous language regardless of what Appellants now assert was its intent. We believe that there is no conclusion that can be reached other than any cause of action against Appellee is moot because there ultimately can be no recovery of damages.

We conclude that the rationale set forth in both *DeStock* and *Hiles* is dispositive herein. Although Appellants preserved their right to pursue a cause of action against Appellee, the "hold harmless" pro-vision effectuates a release of any dram shop liability. Accordingly, we are compelled to agree with the trial court that "[Appellants] are precluded from any recovery against [Appellee] because it would then be entitled to indemnity against King for the amount of any recovery, and [Appellants] would be required to hold King harmless to the extent of the indemnification." Again, this is the "circuity of litigation" that courts must avoid.

Because we have determined that summary judgment was proper herein, we necessarily do not reach Appellants argument concerning the availability of punitive damages.

For the reasons set forth herein, the order of the Jefferson Circuit Court is affirmed.

CLAYTON, JUDGE, CONCURS.

JONES, JUDGE, CONCURS IN RESULT ONLY.