**FORT MITCHELL COUNTRY CLUB, Appellant**

v.

**Timothy LAMARRE, Theresa LaMarre, Nathan LaMarre, and Nicole LaMarre, Appellees.**

No. 2011–SC–000665–DG.

Supreme Court of Kentucky.

Dec. 20, 2012.

Rehearing Denied April 25, 2013.

Mark G. Arnzen, Arnzen, Molloy & Storm, PSC, Donald L. Stepner, Daniel Edward Linneman, Adams, Stepner, Woltermann & Dusing, PLLC, Covington, KY, for appellant.

Todd V. McMurtry, Ryan Michael McLane, Dressman, Benzinger & Lavelle, PSC, Crestview Hills, KY, for appellees.

Opinion of the Court by Justice CUNNINGHAM.

On the evening of September 13, 2008, Timothy and Theresa LaMarre had dinner with Michael and Kimberly Plummer at the Fort Mitchell Country Club (hereinafter "the Club"). Members of the Club, including Mr. Plummer, rented private lockers in which to store their alcohol. Mr. Plummer called the Club prior to dinner to arrange that two bottles of champagne be taken from his locker and chilled. Both the Plummers and the LaMarres lived in the neighborhood near the Club, and all rode to dinner in the Plummers' modified golf cart.

When they arrived at the Club, Mr. Plummer obtained a bottle of red wine from his locker. There is no conclusive proof that the bottles of champagne and wine involved in this case were purchased from the Club. However, the Club did have a policy against its members purchasing alcohol elsewhere and bringing it to the Club. The LaMarres and Mr. Plummer drank the red wine, while Mrs. Plummer alone drank the first bottle of champagne. During dinner, Mr. LaMarre drove the golf cart home to take his son a carry-out meal from the Club. He returned with a second bottle of red wine. The LaMarres

and Mr. Plummer then poured out their glasses containing wine from the first bottle and began drinking from the second bottle of wine. Over the course of dinner, which lasted approximately 70 minutes, five separate employees of the Club spoke to the LaMarres and the Plummers. The two couples were familiar and regular members of the Club. All of the employees had received training in the detection of intoxicated customers. None of them believed that any member of the group was intoxicated. The LaMarres also indicated that they did not think Mr. Plummer was intoxicated when they left the Club that evening.

Following dinner, Mr. Plummer retrieved the second unopened bottle of champagne from the bartender to take home. The four then left the Club on the golf cart with Mr. Plummer driving. Prior to reaching their homes, Mr. Plummer stopped the golf cart so that Mr. LaMarre and his wife could change seats. While stopped, Mr. Plummer opened the bottle of champagne and poured a glass for him and his wife, as well as Mrs. LaMarre. They then proceeded toward the Plummers' home, but stopped along the way to visit with their neighbors, the Hills. As they were leaving the Hills, Mr. Plummer accelerated the golf cart while Mr. LaMarre was still attempting to take his seat. Mr. LaMarre fell from the golf cart, striking his head on the pavement and sustaining serious injuries. While urgent attention was being given to Mr. LaMarre, a police officer arrived to offer assistance. She later stated that she observed no indication of anyone at the scene being intoxicated.

This appeal arises out of a personal injury action filed in the Kenton Circuit Court by Timothy and Theresa LaMarre and their two children, Nathaniel LaMarre and Nicole LaMarre, against Michael and Kimberly Plummer and the Fort Mitchell Country Club. The suit alleged that the Club was liable for injuries incurred by Timothy LaMarre as a result of Mr. Plummer's negligence in driving a golf cart while intoxicated. The trial court granted summary judgment in favor of the Club. The Court of Appeals then reversed the trial court's order granting summary judgment and the Fort Mitchell Country Club sought discretionary review, which was granted.

The suit alleges that the Club was not entitled to the protection of KRS 413.241 (the Dram Shop Act) for two reasons. First, because the Club served alcohol after it was apparent Mr. Plummer was intoxicated. Secondly, it is alleged that the Club was not entitled to the protection because it was guilty of selling alcohol in violation of its special private club license.

The Club operated with a special private club license under KRS 243.270 and KRS 243.030, which only permits the distribution of retail alcoholic drinks. "A distilled spirits and wine retail drink license shall authorize the licensee to purchase, receive, possess, and sell distilled spirits and wine at retail by the drink for consumption on the licensed premises." KRS 243.250. As a result, the Club could sell alcohol for consumption on its premises only.

The trial court held that the Dram Shop Act applied and shielded the Club from any liability in the matter. The trial court found that, under the Dram Shop Act, there was no genuine issue of material fact regarding Mr. Plummer's intoxication, or lack thereof, while he was at the Club. The Court of Appeals reversed this order because it found that it would have been possible for the LaMarres to produce evidence at trial in their favor, and also that genuine issues of material fact existed. Because we hold that there was no genuine issue of material fact regarding Mr. Plummer's intoxication, we reverse and re-

instate the trial court's order granting summary judgment in favor of the Fort Mitchell Country Club.

The pertinent part of the Dram Shop Act, as codified by KRS 413.241, states as follows:

(1) The General Assembly finds and declares that the consumption of intoxicating beverages, rather than the serving, furnishing, or sale of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or another person.

(2) Any other law to the contrary notwithstanding, no person *holding a permit under KRS 243.030*, 243.040, 243.050, nor any agent, servant, or employee of the person, who sells or serves intoxicating beverages to a *person over the age for the lawful purchase thereof* shall be liable to that person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises including but not limited to wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were sold or served, *unless a reasonable person under the same or similar circumstances should know that the person served is already intoxicated at the time of serving.* (Emphasis added.)

The purpose of the law is to simply protect the commercial interest of a business selling alcoholic drinks responsibly, while at the same time prohibiting it from making money by irresponsibly plying intoxicated people with drink who may—because of their intoxication—pose a hazard to others. *See DeStock No. 14, Inc. v. Logsdon*, 993 S.W.2d 952 (Ky.1999).

Whether the Dram Shop Act applies in this case is an issue of statutory construction. Construing a statute is a question of law which we review de novo.

*Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 647 (Ky.2007). "All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature[.]" KRS 446.080(1). "Thus, the cardinal rule of statutory construction is that the intention of the legislature should be ascertained and given effect." *MPM Financial Group, Inc. v. Morton*, 289 S.W.3d 193, 197 (Ky.2009). Further, "[w]here the language of a statute is clear and unambiguous on its face, we are not free to construe it otherwise[.]" *Id.*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. When reviewing a trial court's grant of summary judgment, we must view the record in the light most favorable to the party opposing the motion and must resolve all doubts in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991). "[T]he movant should not succeed unless his right to judgment is shown with such clarity that there is no room left for controversy." *Id.* at 482. However, "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id.*

Here, there is simply a total absence of any evidence that Mr. Plummer was intoxicated while at the Club so that "a reasonable person ... should know that the person served is already intoxicated at the time of the serving." KRS 413.241(2).

The only evidence presented by the La-Marres that related to Mr. Plummer's in-

toxication was the volume of alcohol consumed by the group over the course of dinner. As previously noted, the evidence showed that Mr. Plummer and the LaMarres together consumed two bottles of red wine over a 70–minute period. While it appears that Mrs. LaMarre was poured a total of two glasses of wine, there was no clear evidence showing the amount of wine consumed by each of them individually. In addition, the evidence of Mr. Plummer's appearance or behavior while at the Club indicated that his speech was not slurred, nor did the LaMarres or any of the Club's employees who spoke with him that evening believe he was intoxicated.

Accordingly, we find that Appellees failed to produce affirmative evidence showing that there was a genuine issue as to the Club's employees' knowledge of Mr. Plummer's intoxication while being served alcohol. Even assuming Mr. Plummer was intoxicated, there is no evidence showing that the Club's employees, as reasonable people, should have realized it. As a result, the trial court's granting of the Club's motion for summary judgment was proper.

█ On appeal, Appellees contend that they lacked sufficient time and opportunity to develop their proof of Mr. Plummer's intoxication. Specifically, they claim that they had a toxicology report and possible expert testimony that could have been produced at trial concerning Mr. Plummer's state of intoxication.

█ Summary judgment "is proper only after the party opposing the motion has been given ample opportunity to complete discovery and then fails to offer controverting evidence." *Suter v. Mazyck,* 226 S.W.3d 837, 841 (Ky.App.2007). The LaMarres filed their initial complaint in this case on October 6, 2008. The complaint was amended to include the Club on April 17, 2009. Approximately eight months later, the Club filed its motion for summary judgment. The trial court

granted that motion on April 19, 2010. There is nothing in the record suggesting that at any time during this process counsel for the LaMarres had obtained, or intended to obtain, either a toxicology report or an expert toxicologist to testify as to Mr. Plummer's intoxication. Nor is there any evidence that blood was taken from Mr. Plummer on the night of the incident. Despite repeated requests by the trial court for proof of intoxication, there was no mention of a toxicologist. Regardless, the toxicologist would not have been able to speculate as to Mr. Plummer's actual blood alcohol level or as to the ultimate issue—how Mr. Plummer appeared to the Club's employees during the night of the incident. The critical language of the statute protecting the Club does not deal with the actual inebriation of Mr. Plummer, but whether a "reasonable person" should know that the person being served alcohol is intoxicated.

█ The second basis for the claimed liability of the Club rests upon the allegation that it was in violation of its liquor license by providing Mr. Plummer with the unopened bottle of champagne. The Court of Appeals found that the Dram Shop Act's protections did not apply to the Club in this case because the Dram Shop Act was not intended to protect an establishment that distributes alcohol in direct violation of its license. Its rationale was that applying the Dram Shop Act in such circumstances would stifle all alcoholic licensing laws. We disagree.

First of all, as noted earlier, there is no direct proof that the Club did anything but provide Mr. Plummer alcohol that already belonged to him. The best proof possible would have been that it was sold to him by the Club in violation of its licensing authority at some time before the evening of the injury.

By its terms, the Dram Shop Act applies to persons holding a permit under KRS 243.030 and absolves them of liability unless one of the stated exceptions is met. Whether a party is alleged to have violated an alcohol license is not mentioned in any of these exceptions, and we refuse to imply it where the legislature has expressly enumerated its own exceptions. In addition, a party does not cease to "hold" a permit just because license violations are alleged. Based on the plain unambiguous language of the statute, we find that because the Club holds a permit under KRS 243.030 it is not liable for Mr. Plummer's negligence unless one of the stated exceptions under the act is met.

The only exception at issue in this case is whether the Club's employees knew or reasonably should have known that Mr. Plummer was intoxicated at the time he was served alcohol. It was on this issue that the trial court granted summary judgment. Because we find these issues dispositive, there is no need to address the additional issues presented.

Accordingly, we reverse the decision of the Court of Appeals and reinstate the Kenton Circuit Court's summary judgment order.

MINTON, C.J.; ABRAMSON, NOBLE and VENTERS, JJ., concur.

SCOTT, J., dissents by separate opinion.

SCHRODER, J., not sitting.

SCOTT, J., dissenting.

I must respectfully dissent from the majority's conclusion for two reasons. First, I do not believe KRS 413.241—Kentucky's Dram Shop Act—is applicable to the facts of this case. KRS 413.241 is applicable to "person[s] [and their employees] holding a permit under KRS 243.030, 243.040, [or] 243.050...." Appellant held a "special private club license" under KRS 243.270. The "special private club license" author-ized Appellant "to exercise the privilege of a ... distilled spirits and wine retail drink licensee ... at the designated premises if the general public is excluded." KRS 243.270. Admittedly, this permitted Appellant "to purchase, receive, possess, and sell distilled spirits and wine at *retail by the drink for consumption on the licensed premises.*" KRS 243.250 (emphasis added).

However, the evidence established that Appellant *violated the terms of its license* by providing Mr. Plummer a bottle of champagne to be consumed on or off of Appellant's premises. Not being served by the drink, this sale was a clear violation of Appellant's license. Being such, I cannot conceive (as does the majority) that the legislature intended the Dram Shop Act's protections to extend to those who violate the licenses the Act was designed to protect.

Secondly, I would also reverse the trial court's grant of summary judgment because Appellees should have been given the opportunity to garner evidence of intoxication from their toxicology expert before the trial court considered Appellant's motion. "A summary judgment, which is a final order, should not be entered as a form of penalty for failure of the plaintiff to prove his case quickly enough." *Conley v. Hall,* 395 S.W.2d 575, 580 (Ky.1965). Moreover, summary judgment should be granted "[o]nly when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor...." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 482 (Ky. 1991).

The trial court, by granting Appellant's motion when it did, precluded a decision on the merits. Thus, I would affirm the Court of Appeals' decision on this issue, albeit for different reasons, and vacate the

summary judgment order of the trial court.