Rebecca **RIDDLE**, Deceased; Mary Page, Guardian of Jacob Riddle, Sandie Riddle, and Stacey Zackery, **Appellants,**

v.

**SCOTTY'S DEVELOPMENT, INC.;** Raleigh Zackery, Jr.; Barbara Rector, next friend to Elizabeth Riddle; Uninsured Employers' Fund; and Workers' Compensation Board, **Appellees.**

No. 1998–CA–002204–WC.

Court of Appeals of Kentucky.

Sept. 17, 1999.

D. Bailey Walton, Bowling Green, KY, for Appellant.

A.B. Chandler, III, Attorney General, Michael A. Richardson, Assistant Attorney

General, Frankfort, KY, for Appellee, Uninsured Employers' Fund.

Amanda Anderson Young, Bowling Green, KY, for Appellee, Scotty's Development, Inc.

Before: BUCKINGHAM, JOHNSON and SCHRODER, Judges.

## OPINION

JOHNSON, Judge:

Mary Page, who is the guardian of three of the children of the decedent, Rebecca Riddle, petitions this Court for review of an opinion of the Workers' Compensation Board. The Board had remanded the decision to the Chief Administrative Law Judge, who had set the weekly death benefits awarded to Page at a minimum amount, for the Chief ALJ to reduce the weekly death benefits. Since Kentucky's workers' compensation laws do not provide for a minimum weekly death benefit, we affirm.

While Riddle was at work on October 18, 1994, she was killed in a gruesome way when she was hit in the head with a blunt object and dropped 35 feet, head first, through a hole in the floor of the building to the concrete surface below. She died from a massive skull fracture. Riddle, who was not married, was the mother of four children whose ages ranged from 4 to 13 years old.

At the time of her death, Riddle was working for Raleigh Zackery, Jr.,[1] who owned a scrap metal business and worked odd jobs. Raleigh Zackery and two of his employees were working for Scotty's Development, Inc., a company which had bought and was restoring a large building. Raleigh Zackery was given the job of removing equipment from the top of the building. On the day before her death,

Riddle called Raleigh Zackery to see if he had any work for her. He agreed to pay her $30.00 if she would come to the building the next day and sweep. When Riddle came to work at around 9:00 a.m., Raleigh Zackery showed her where she could get a broom and where to sweep. Twenty or thirty minutes later, Riddle's body was found on the ground floor of the building by one of Raleigh Zackery's other employees. At the time of the hearing in this matter, the police had not determined the identity of Riddle's assailant.

On September 5, 1995, Page, Raleigh Zackery's former wife, was appointed as the guardian for her three grandchildren, Jacob Riddle, Sandie Riddle and Stacey Zackery. On January 17, 1996, she filed a claim to get workers' compensation benefits for these children.[2] On August 27, 1997, the Administrative Law Judge found that on the date of her death, Riddle was an employee of Raleigh Zackery, who was uninsured; that Riddle's death was the result of a homicide; and that her death came within the provisions of the positional risk doctrine described in *Corken v. Corken Steel Products, Inc.*, Ky., 385 S.W.2d 949 (1964). Furthermore, the ALJ found that Scotty's "was in the business of owning, renovating, and renting property on the site of the Firestone building," and that "work performed by outside contractors such as Mr. Zachary [sic] . . . was of a vital necessity in order to continue in the property rental business at that site." Accordingly, the ALJ determined that under Kentucky Revised Statutes (KRS) 342.610 Scotty's was responsible for payment of benefits to Page for Riddle's children. The ALJ calculated Riddle's average weekly wage to be $8.46 and, noting that KRS 342.750 contained no provision for a minimum amount of benefits in such a

1. Raleigh Zackery, Jr. is the grandfather to Riddle's three youngest children as a result of her relationship with his son, Lonnie Zackery.

2. After Riddle's death, her oldest child, Elizabeth Riddle, resided with Barbara Jean Rector (Rector), who was appointed as the guardian for that child. Rector was named as a defendant in this action, but she neither entered an appearance in the case, nor asserted a claim for benefits on behalf of her ward.

claim, awarded the children 50% of that wage, or $4.23 per week during their dependency. The ALJ also ordered that under KRS 342.720 Scotty's was responsible for the payment of burial expenses.

Both Scotty's and Page filed petitions for reconsideration with the ALJ. Page's motion was denied, except the benefits were increased to $6.34 per week, an amount equal to 75% of the Riddle's average weekly wage. The ALJ denied Scotty's motion to be relieved of Riddle's burial expenses, and Scotty's appealed to the Board.[3]

On December 12, 1997, the Board rendered an opinion which affirmed the decision of the ALJ with respect to the issue of Scotty's responsibility for burial expenses.[4] It also held that the ALJ erred in failing to find that Raleigh Zackery was primarily liable whereby Scotty's would be allowed to recover from its subcontractor any compensation it had to pay. Finally, the Board, *sua sponte*, determined that the amount of benefits to be paid on behalf of Riddle's children should be increased to a minimum benefit:

> We feel compelled to address one further issue. KRS 342.285(2)(c) authorizes the Board in its review to determine whether or not an order, decision, or award is in conformity with the provisions of Chapter 342. The ALJ in this claim indicated that a review of KRS 342.750, which provides for death benefits when death results from a work-related incident, provides for no minimum amount of benefits. While that statement is true on its face, KRS 342.740(2) does clearly indicate the legislature's intent that there be a minimum weekly income benefit for death as well

as total disability, that statute providing that wherever a change in the average weekly wage of the state is of an amount that increases or decreases the minimum weekly income benefit for total disability *or death* by One Dollar or more, an adjustment is to be made in that minimum. KRS 342.730(1)(a) clearly provides that there is no minimum weekly income benefit for permanent partial disability. We have no such language in KRS 342.750. The minimum benefit for a death occurring in 1994 is $83.19. As stated by Justice Palmore in *Messer v. Drees*, Ky., 382 S.W.2d 209 (1964) at 212, 213:

> > [B]earing in mind that compensation laws are fundamentally for the benefit of the injured work[er], a just claim must not fall victim to rules of order unless it is clearly necessary in order to prevent chaos.... The important question is whether the man got the relief to which the law entitled · him, based upon the truth as we are now able to ascertain it.

> (Emphasis original).

> While the authority of an ALJ to amend an order based upon an incorrect view of law previously adopted does not extend to a case where the award has been sustained on appeal, the award in this claim is being in part reversed and remanded with directions that the ALJ enter an award holding respondent, Raleigh Zackery, Jr., primarily liable for it. Therefore, in our opinion, the ALJ is authorized at any time within the period for which compensation is allowed to change or revoke the order on the ground of mistake of law. *Stearns*

---

**3.** Scotty's argued that Page had not properly requested burial expenses as she had not itemized such expenses as required on her initial claim form. It argued that "[t]here was no proof that such expenses were actually incurred" and suggested that Riddle may "have been buried in a 'potter's field' ". It further contended that the issue had been waived since its liability for such expenses

was not listed as a contested item on the prehearing conference order.

**4.** The Board observed: "We have seen many issues raised over the years in a workers' compensation proceedings[ ] but, quite honestly, none quite as parsimonious as this. Dickens himself could have never even thought of this one."

*Coal & Lumber Co. v. Vanover*, 262 Ky. 808, 91 S.W.2d 518 (1936); and *Wheatley v. Bryant Auto Service*, Ky., 860 S.W.2d 767 (1993). In our opinion, it is appropriate to draw this matter to the attention of the ALJ since the litigants have some right to expect us to assume a full share of responsibility for seeing that a controversy is correctly decided. *First Nat'l Bank of Louisville v. Progressive Casualty Inc. Co.*, Ky., 5[17] S.W.2d 226 (1974).

On remand, the matter was reassigned to the Chief ALJ. Scotty's argued before the Chief ALJ the case of *Mills v. Vaughn*, Ky.App., 581 S.W.2d 29 (1979), in which this Court held that dependents were not entitled to a minimum weekly death benefit:

The problem which now faces this Court is whether the Board acted properly when it raised the $13.60 award, which represented 25% of his average weekly wage, to the $28.00 minimum weekly benefit under KRS 342.740(1) and KRS 342.740(2). It is the opinion of the Court that such an increase was improper. Although it may appear inconsistent that the legislators of this Commonwealth would allow a minimum recovery for total disability and yet not allow it in a case which resulted in the death of a worker who supports one or more dependents, they appear to have done so.

. . .

. . . As the statutes set a mandatory percentage of wages attributable to the dependent according to the relationship to the deceased, so may it set a reduction of these benefits that may fall below the statutory minimum allowable in a disability case. The language of the statute clearly demonstrates its intentions. However,

[o]ur function in interpreting statutes is limited to analyzing and applying what the legislature has said, and does not extend to psychoanalyzing the legislature and applying what it may

have meant to say. *Apache Coal Company v. Fuller*, Ky., 541 S.W.2d 933, 935 (1976).

This Court feels that this result may lead to situations in which the percentages payable to each dependent are so limited as to be inconsequential to his income available for support. Nevertheless, we must utilize the statutes as enacted by the legislature.

Accordingly, we find that the Workmen's Compensation Board had no right to raise the $13.60 award to the statutory minimum that is applicable in total or partial disability cases, due to the lack of a statutory mandate to support such an order and clear statutory language allowing payments to dependents that could fall below that minimum.

*Id.* at 30–31.

The Chief ALJ considered *Mills, supra,* but concluded that KRS 342.740(2) "evidences the General Assembly's intent to impose a minimum weekly benefit for death as well as total disability," and ordered that Scotty's pay Page the sum of $83.19 weekly during the period of Riddle's children's dependency. The Chief ALJ opined that "[a]ny other interpretation would render language in that statute meaningless." Scotty's once again appealed to the Board.

On July 31, 1998, the Board rendered the opinion that is currently before this Court. The Board reluctantly reversed the Chief ALJ's increase in the benefits awarded to Page. The Board concluded that it was "bound by the doctrine of *stare decisis* to adhere to the opinion of the Court in *Mills, supra,* even when [it] disagree[d] with the conclusion reached by the Court." In a separate concurring opinion, Board Member Dwight Lovan stated that he too felt "bound by the actual holding in *Mills, supra,*" but believed it was "an issue that should be reconsidered."

█ In her brief filed in this Court, Page argues that "[t]he issue of whether

there is a minimum death benefit does not appear to be clear[,] as the Court in *Mills* failed to take into consideration the language in KRS 342.740." She insists that when reading KRS 342.740(2), with KRS 342.750, a legislative intent to provide for a minimum death benefit is apparent. She points out that KRS 342.740(2), the statute which governs how the state's average weekly wage is determined and when adjustments are made to benefits based on that wage, refers specifically to death benefits:

> (2) Whenever a change in the average weekly wage of the state is of an amount that increases or decreases the *minimum weekly income benefits for total disability or death by $1 or more, or the maximum weekly income benefits for total disability or for death by $2 or more*, computed in each case and rounded to the nearest dollar, an adjustment in those minimums or maximums which are affected in the requisite amount by the change in the average weekly wage of the state shall be made which will reflect the increase or decrease, but no change in these limitations shall otherwise be made (emphasis added).

**5.** *Keeton v. City of Ashland*, Ky.App., 883 S.W.2d 894, 896 (1994), (quoting *Brooks v. Meyers*, Ky., 279 S.W.2d 764, 766 (1955)).

**6.** KRS 342.750 does not make any reference to a minimum death benefit:
"If the injury causes death, income benefits shall be payable in the amount and to or for the benefit of the persons following, subject to the maximum limits specified in subsections (3) and (4) of this section:
. . .
(1)(d) To the children, if there is no widow or widower, 50 percent of such wage for one (1) child, and 15 percent for each additional child, divided among such children, share and share alike.
. . .
(3) For the purposes of this section, the average weekly wage of the employee shall be taken as not more than the average weekly wage of the state as determined by KRS 342.740. In no case shall the aggregate weekly income benefits payable to all beneficiaries under this section exceed the

■ We agree that KRS 342.740(2) contemplates the existence of a minimum weekly income benefit for death, and we are aware of the rule of statutory construction that " 'a [s]tatute should be construed, if possible, so that no part of it is meaningless or ineffectual.' " [5] However, in discerning the intent of the Legislature, it is not possible to reconcile the words "minimum weekly income benefits for . . . death" contained in KRS 342.740(2), with KRS 342.750, the specific statute setting forth the benefits to be paid dependents, presumptive or actual, in the event of a death of an employee from a work-related incident. The latter statute simply does not contain any provision for the award of a minimum benefit. Rather, the statute contains formulas for calculating the death benefit depending on the various numbers and types of dependents. The benefits are subject only to statutory maximums, and not to any minimum.[6]

■ In its brief, the appellee, Uninsured Employers' Fund, explains the inconsistency in the statutes by pointing out that prior to 1972, KRS 342.070, the predecessor to KRS 342.750, provided for both a maximum and a minimum weekly benefit payable for death.[7] In 1972, KRS 342.070

> maximum income benefit that was or would have been payable for total disability to the deceased, including benefits to his dependents.
> (4) The maximum weekly income benefits payable for all beneficiaries in case of death shall not exceed 75 percent of the average weekly wage of the deceased as calculated under KRS 342.140, subject to the maximum limits in subsection (3) above. . . ."

**7.** KRS 342.070(5), which was repealed in 1972, did provide for a minimum weekly death benefit:

> The minimum weekly benefits payable for death under this section shall be twenty-five percent of eighty-five percent of the average weekly wage of the state as determined under subsection (2) of KRS 342.140 and the maximum weekly benefits payable for death under this section shall be fifty percent of eighty-five percent of the average weekly wage of the state as determined under subsection (2) of KRS 342.140.

was repealed and replaced with KRS 342.750. Since its enactment in 1972, KRS 342.750 has never provided for a minimum weekly death benefit. We must assume that since the statutory scheme previously provided for a minimum death benefit, the Legislature's failure to include such a benefit in the replacement statute constituted a deliberate choice and reflected its intent to no longer burden the employer with a minimum benefit in the event of a worker's death. "The well-settled rule of statutory construction is that, where a new law covers the whole subject of an old one, its effect is to repeal the prior law, as the act of the Legislature is presumed to be passed by it deliberately and with knowledge of then existing laws."[8] Thus, we conclude that the failure of the Legislature to also amend KRS 342.740(2), to make it consistent with KRS 342.750, was a mere oversight. Such inconsistencies must be resolved in favor of the more specific statute governing death benefits, since "[w]here two statutes deal with the same subject matter, the one treating it in a particular manner is preferred over the general."[9]

Moreover, although the Legislature has amended KRS 342.750 since the *Mills* decision was rendered in 1979, it has not changed the statute to provide for a minimum death benefit. The fact that the Legislature has not amended the statute following the publication of *Mills, supra,* provides "extremely persuasive evidence of the true legislative intent."[10]

■ Page, as well as Board Member Lovan, allude to certain policy considerations, specifically, the desirability of re-quiring the employer, rather than the general public, to bear the responsibility for providing for the financial needs of the dependents of an employee killed in a work-related incident. They also suggest that the beneficent purposes of the Act are not met when a totally disabled employee is entitled to a minimum weekly benefit, but in the event of her death, her dependents are not entitled to a minimum benefit. We agree that the needs of the dependents of a worker who has been killed may be as great as, if not greater than, those of the dependents of an employee who survives, but is rendered totally disabled by a work-related incident. However, in construing a statute, it is a settled principle, as stated in *Mills, supra,* that the Court may not add benefits which the Legislature has not seen fit to provide.[11] While it may be appropriate to reconsider this issue, it is clearly not within the purview of this Court to re-write the statute to provide for a minimum weekly death benefit; only the Legislature has that authority.

Accordingly, the opinion of the Board is affirmed.

ALL CONCUR.

---

**8.** *Ferguson v. Chandler,* 266 Ky. 694, 99 S.W.2d 732, 736 (1936), (quoting *Bell v. Talbott,* 252 Ky. 721, 68 S.W.2d 36, 39 (1934)). *See also, Yocum v. Lester,* Ky., 544 S.W.2d 234, 235 (1976).

**9.** *Bogard v. Commonwealth,* Ky.App., 687 S.W.2d 533, 535 (1984).

**10.** *Rye v. Weasel,* Ky., 934 S.W.2d 257, 262 (1996); *see also, City of Richmond v. Public Service Commission,* Ky., 294 S.W.2d 513

(1956) (by not amending statute in response to judicial construction, the General Assembly "ha[d] impliedly acquiesced" in the Court's interpretation as to its intent).

**11.** *Id.* at 31. *See also, Gateway Construction Co. v. Wallbaum,* Ky., 356 S.W.2d 247, 248–49 (1962) ("it is neither the duty nor the prerogative of the judiciary to breathe into the statute that which the Legislature has not put there").