**Julio MELO, M.D., Appellant,**

v.

**Steven G. BARNETT, et al., Appellee.**

No. 2003–SC–0200–DG.

Supreme Court of Kentucky.

March 17, 2005.

Christopher P. O'Bryan, Cathleen Charters Palmer, O'Bryan, Brown & Toner, Michael Brian Dailey, Louisville, Counsel for Appellant.

A. Thomas Johnson, Louisville, Counsel for Appellee.

David A. Friedman, Louisville, Jonathan Givner, Hayley Gorenberg, Lambda Legal Defense and Education Fund, New York, NY, Aids Volunteers of Lexington, Amicus Curiae, Kentucky Aids Life Alliance, Amicus Curiae, The Kentucky HIV/AIDS Advocacy and Action Group, Amicus Curiae.

GRAVES, Justice.

This matter comes to this Court on discretionary review of a claim for breach of medical confidentiality and unreasonable violation of privacy by an HIV positive patient seeking damages from a consulting physician for disclosing his HIV status in a medical record which was forwarded to the employer.

During the course of his employment as a veterinary assistant, Appellee, Steven Barnett, was bitten by a cat. After developing an infection, he was admitted to the hospital where the treating physician diagnosed cellulitis and prescribed antibiotics. Because Barnett was HIV positive, the treating physician consulted Appellant, Julio Melo, M.D., an infectious disease specialist who treated AIDS patients. Dr. Melo's opinion was sought concerning the appropriate antibiotic treatment for a patient who was already undergoing antibiotic treatment for HIV. Dr. Melo examined Barnett at the hospital to assess the impact of his hand infection on his HIV treatment regimen and to coordinate the antibiotic treatment for his cellulitis and HIV infection.

Upon his hospital admission, Barnett executed a consent form which authorized the disclosing of his HIV status to his

employer in the event of a work-related injury. The "Consent to Treatment and Financial Assignment" form which Barnett signed provided as follows:

I authorize Jewish Hospital (or affiliated facility) to release and/or obtain information from my medical record ... including the results for Human Immuno-deficiency Virus Infection (HIV)... to any physician rendering care, health, sickness and accident insurance carrier, workers' compensation carrier and employer in the event of an on-the-job injury, upon ... information that the person or entity requesting such information has a policy covering my present treatment and/or hospitalization.

Since the necessary medical treatment for Barnett's injury was compensable under the Workers' Compensation Law, the employer or its insurance carrier was required to pay for Dr. Melo's reasonable and necessary professional services. KRS 342.020(1) provides that "the provider of medical services shall submit the statement for services within forty-five (45) days of the day treatment is initiated." The employer or insurer thereafter is required to pay for the services rendered to an employee directly to the provider of services within 30 days. *Id.* A statement of services is defined as either a completed Form HCFA 1500 or Form UB–92, depending on the provider, with an attached copy of legible treatment notes, hospital admission and discharge summary, *or* other supporting documentation for the billed medical treatment. 803 KAR 25:096(1)(5)(a). If the medical provider does not tender a statement of services, the medical bills are not compensable. 803 KAR 25:096, section 6. It is ultimately the employer's responsibility to pay the reasonable and necessary medical expenses for the cure and relief of an employee's occupational injury. KRS 342.020(1).

Barnett had revealed his HIV status to only a very few select persons, and had intentionally kept his HIV status private from his employer. And, in fact, the employer first became aware of Barnett's HIV status after receiving the statement of services and Dr. Melo's consult notes. Barnett later quit his job claiming the office environment had become uncomfortable. Barnett thereafter sued Dr. Melo for damages. The trial court granted Dr. Melo's motion for summary judgment because the worker's compensation statute required Dr. Melo to disclose the information concerning medical treatment and thus the disclosure was not unreasonable. The Court of Appeals reversed and remanded for a trial. This Court granted discretionary review. We reverse the Court of Appeals and reinstate the trial court's judgment of dismissal.

The issue decided by the lower courts was the conflict between a physician's statutory duty under law to protect the privacy of a patient's infection with HIV and the statutory requirement of KRS 342.020 and 803 KAR 25:096 that a statement of services accompany a physician's request to the employer for payment of an employee's work-related medical expenses. However, the lower courts failed to address the requirements of KRS 342.020(8) and 803 KAR 25:010(5)(1)(b) and (c).

An integral and important part of the benefit scheme of the Kentucky Workers' Compensation Act is the provision for medical benefits. When Barnett sought medical benefits provided by the workers' compensation law, he became subject to the provisions of that Act. KRS 342.020(8) provides:

An employee who reports an injury alleged to be work-related ... shall execute a waiver and consent of any physician-patient, psychiatrist-patient, or chiropractor-patient privilege with re-

spect to any condition or complaint reasonably related to the condition for which the employee claims compensation. *Notwithstanding* any other provision in the Kentucky Revised Statutes, any...health care provider shall, within a reasonable time after written request by the ..., employer, [or] workers' compensation insurer, ... provide the requesting party with any information or written material reasonably related to any injury or disease for which the employee claims compensation.

Further, 803 KAR 25:010(5)(1)(b) and (c), which requires a signed waiver and consent for release of medical information, states:

(1) To apply for the resolution of an injury claim, the applicant shall file ... the following completed documents:

(b) Medical history (Form 105), to include all physicians, chiropractors, osteopaths, psychiatrists, psychologists, and medical facilities such as hospitals where the individual has been seen or admitted in the preceding fifteen (15) years ....

(c) Medical release (Form 106);

Finally, Form 106 (Kentucky Department of Workers' Claims Medical Waiver and Consent) is a very broad medical authorization which reads as follows:

MODIFIED FORM 106
ADOPTED APRIL 2003

KENTUCKY
DEPARTMENT OF WORKERS CLAIMS
MEDICAL WAIVER AND CONSENT

I, _____ having filed a claim for workers' compensation benefits, do hereby waive any physician-patient, psychiatrist-patient, or chiropractor-patient privilege I may have and hereby authorize any health care provider to furnish to_____, the Division of Workers Compensation Funds, the Uninsured Employers' Fund, or Administrative Law Judge any information or written material reasonably related to my work-related injury occurring on or about _____ any medical information relevant to the claim including past history of complaints of, or treatment of, a condition similar to that presented in this claim or other conditions related to the same body part ....

The authorization includes, but is not restricted to, a right to review and obtain copies or all records, x-rays, x-ray reports, medical charts, prescriptions, diagnoses opinions and courses of treatment.

Signed at _____, Kentucky, this ___ day of _____, 20_____.

_____
Signature of Patient or Personal Representative
Social Security Number: _____

_____
Witness Signature

_____
Description of Personal Representative's Authority

Barnett argues that KRS 214.181[1] confers an absolute right to privacy and that

1. KRS 214.181—The General Assembly finds that the use of tests designed to reveal a condition indicative of human immunodeficiency virus (HIV) infection can be a valuable tool in protecting public health. The General Assembly finds that despite current scientific knowledge that zidovudine (AZT) prolongs the lives of acquired immunodeficiency syndrome victims, and may also be effective when introduced in the early stages of human immunodeficiency virus infection, many members of the public are deterred from seeking testing because they misunderstand the nature of the test or fear that test results will be disclosed

the non disclosure provisions have been breached. Dr. Melo responds that the release executed by Barnett to the hospital was broad enough to cover his treatment. However, this matter is governed by KRS 342.020(8) and 803 KAR 25:010(5)(1)(b) and (c), and may be resolved on the basis of these provisions of the Kentucky Workers' Compensation Act. By seeking benefits under the Act, Barnett placed his medical condition in issue. By operation of KRS 342.020(8) and 803 KAR 25:010, Barnett was required to execute a release for medical information concerning his treatment for the work-related injury. Since the employer was required by law to pay the work-related medical bills, the very same law gave the employer the right to know the pertinent medical information.

The decision of the Court of Appeals is reversed and the judgment of the trial court is reinstated.

LAMBERT, C.J., GRAVES, JOHNSTONE, and WINTERSHEIMER concur.

without their consent. The General Assembly finds that the public health will be served by facilitating informed, voluntary, and confidential use of tests designed to detect human immunodeficiency virus infection.
. . .
(5) (c) No person who has obtained knowledge of a test result pursuant to this section shall disclose or be compelled to disclose the identity of any person upon whom a test is performed, or the results of a test in a manner which permits identification of the subject of the test, except to the following persons:
1. The subject of the test or the subject's legally authorized representative;
2. Any person designated in a legally effective release of the test results executed . . . by the subject or the subject's legally authorized representative;
3. A physician, nurse, or other health-care personnel who has a legitimate need to know the test result . . .

SCOTT, J., dissents in a separate opinion in which COOPER, and KELLER, J.J., join.

SCOTT, Justice, dissenting.

I respectfully dissent.

The Appellant, Dr. Melo, argues he was required by KRS 342.020 to provide his treatment notes, along with his statement for services, regarding his treatment of Steven Barnett, notwithstanding the provisions of KRS 214.181. I do not agree.

Under the workers' compensation scheme for payments of medical services, KRS 342.020(1), the employer or others acting on his behalf are required to make payments for services rendered to an employee within 30 days of receipt of a "statement for services." 803 KAR 25:096, Section 1(5) defines a "statement for services" as a completed HCFA 1500 along with an attached copy of legible treatment notes, hospital admission and discharge summary, or **other supporting documentation.** This allows the health care provider, where appropriate, to provide documentation that does not include references to sensitive information, i.e., HIV/AIDS

4. Health-care providers consulting between themselves . . .
9.e. No person to whom the results of a test have been disclosed shall disclose the test results to another person except as authorized by this subsection. When disclosure is made pursuant to this subsection it shall be accompanied by a statement in writing that includes the following or substantially similar language: "This information has been disclosed to you from records whose confidentiality is protected by state law. State law prohibits you from making any further disclosure of such information without the specific written consent of the person to whom such information pertains, or as otherwise permitted by state law. A general authorization for the release of medical or other information is NOT sufficient for this purpose. . . ."

information. Pursuant to 803 KAR 25:096, Dr. Melo was authorized to provide "other appropriate documentation" in order to receive payment for his services; assuming it was even necessary.

The Appellant's argument that KRS 342.020 and 803 KAR 25:096 required him, without regard to the nature of the information he possessed, to provide his treatment notes, in contravention of KRS 214.181, is not compelling. The Kentucky General Assembly recognized many members of the public are deterred from seeking testing and treatment because they misunderstand the nature of the test or fear that results will be disclosed without their consent. KRS 214.181(1). Given this fear, the General Assembly was careful when drafting KRS 214.181, to put in Section (5)(c), which provides a specific list of persons to whom HIV/AIDS test results might be disclosed.[1] Mr. Barnett's employer was not one of the persons noted to be privy to this information.

Clearly, under the established rules of statutory construction, when two statutes deal with the same subject matter, one in a broad, general way and the other specifically, the specific statute prevails. *DeStock # 14, Inc. v. Logsdon*, 993 S.W.2d 952 (Ky.1999); *Land v. Newsome*, 614 S.W.2d 948 (Ky.1981); *Riddle v. Scotty's Development, Inc.*, 7 S.W.3d 385 (Ky.App.1999); *Reisinger v. Grayhawk Corportion*, 860 S.W.2d 788 (Ky.App.1993). KRS 214.181 is the more specific statute. Therefore, the only way to comply with the demands of KRS 214.181 is to limit the disclosure of information to the persons noted in section (5)(c). This resolution also meets our standards on reconciliation. "Where there is an apparent conflict between statutes or

sections thereof, it is the duty of the court to try to harmonize the interpretation of the law so as to give effect to both sections or statutes if possible." *Ledford v. Faulkner*, 661 S.W.2d 475 (Ky.1983).

Finally, and possibly the most compelling ground for resolution, as well as the impetus for KRS 214.181, is the public policy concern evidenced by the loss of employment resulting from this case. As is now well known, the transmission of HIV/AIDS does not occur through everyday contact with infected persons, rather, according to the Centers for Disease Control and Prevention, HIV/AIDS is spread by sexual contact with an infected person, by sharing needles and/or syringes with someone who is infected, or, less commonly, through blood transfusions.[2] However, this knowledge often does not remedy the discrimination towards and the stigma felt by persons infected by the disease.

Dr. Melo was aware, according to his own deposition testimony, of KRS 214.181 and patient privacy rights. He attended a continuing medical education course dealing specifically with HIV/AIDS confidentiality prior to the disclosure of Stephen Barnett's private medical condition. Furthermore, Dr. Melo's assistant told Mr. Barnett that she did not realize that the HIV/AIDS information was in the treatment note until he pointed it out to her. Moreover, Dr. Melo, an infectious disease specialist, practices predominantly in a field of medicine which demands a higher degree of attention to the rights of his patients.

We do consider that physicians are trained in medicine, not the intricacies of the law, and that even judges struggle

---

1. Refer to Footnote 1 of Majority Opinion.

2. Centers for Disease Control and Prevention, National Center for HIV, STD and TB Prevention, Divisions of HIV/AIDS Prevention, Fact Sheet, HIV and Its Transmission <*http://www.cdc.gov/hiv/pubs/facts/transmission.htm* > (accessed Feb. 18, 2005).

with the proper interpretation of these complicated issues. Yet we cannot ignore the impact disclosure can have on an affected person's life. This is the reason for KRS 214.181 and it cannot be attained if KRS 342.020 and 803 KAR 25:096, Section 2(5) are interpreted otherwise.

Therefore, for the reasons discussed herein, I respectfully dissent and would affirm the decision of the Court of Appeals, sending this matter back to the trial court for further proceedings consistent with this opinion.

COOPER and KELLER, JJ., join this dissenting opinion.