

# NUMBER 13-22-00271-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOHN BING SOUTHARD
A/K/A JOHN SOUTHARD,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

### On appeal from the 36th District Court
### of Aransas County, Texas.

## MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Tijerina

Appellant John Bing Southard a/k/a John Southard was convicted of sexual assault of a child, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(D). Appellant was sentenced to fifteen years' incarceration. By two issues, appellant contends that (1) the evidence is insufficient, and (2) his trial counsel rendered ineffective

assistance. We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

By his first issue, appellant contends that the evidence is insufficient to support the jury's verdict. Specifically, appellant argues that although the child complainant "testified that the contact occurred," "the evidence conclusively establishes reasonable doubt that the contact occurred before [the complainant], D.W.[,] turned 17 years of age." Appellant states, "D.W. turned 17 in November 2016, seven months before he accused [appellant]. D.W.'s testimony revealed significant issues with his memory and an inability to establish a timeline of any sexual assault." Appellant does not challenge the sufficiency of the evidence as it pertains to the other elements of the offense.

### A. Pertinent Facts

The State charged appellant with the offense of sexual assault of a child, D.W.[1] *See id.* The State accused appellant of using his sexual organ to make contact with D.W.'s anus when D.W. was under the age of seventeen. *See id.*

At trial, D.W. testified that he began working for appellant approximately two weeks after moving to Taylor Oaks RV Park in July 2016. D.W. was born on November 12, 1999; thus, D.W. was sixteen years old when he started working for appellant. D.W. stated that he was tasked with mowing, cleaning, and painting. D.W. said that appellant "started paying [him] if he worked naked for him." The State asked D.W. to explain. D.W. stated, "I mean, naked and painting. And mowing the lawns naked." According to D.W., appellant

---

[1] Initially, the State indicted appellant with two counts of aggravated sexual assault of a child. However, prior to trial, the State abandoned the first count which alleged that appellant intentionally or knowingly caused the sexual organ of D.W., who was a child under seventeen years of age, to make contact with appellant's mouth. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(C).

2

watched him work naked while appellant sat down smoking a cigarette and drinking beer.[2] D.W. said that the situation "just started getting weird[er] and weirder."[3] The State asked D.W. to elaborate. D.W. stated that he meant that eventually, appellant asked D.W. to give him massages while both D.W. and appellant were naked and "physical stuff" happened between the two.

D.W. said that the massages occurred when he was "around 15 to 16 years old."[4] The State asked D.W. to explain what he meant when he stated that the massages would lead to "touching and stuff like that." D.W. said, "Like, touching his penis and doing, like, you know, anal and stuff like that."[5] D.W. clarified that by "anal" he meant that appellant used his penis to penetrate D.W.'s anus, which D.W. described as painful. D.W. testified that the anal penetration occurred "[a] couple of times." The State asked, "[H]ow much time do you think passed between you starting to work for [appellant] and [appellant] putting his penis on your anal [sic]?" D.W. responded "After a few weeks of working with him."

D.W. told his father on June 15, 2017[6], that appellant had put his penis in D.W.'s mouth. D.W.'s father testified that D.W. was inconsolable on June 15, 2017. D.W.'s father

---

[2] Another witness, Omar Ortegon, testified that, when he lived by appellant's property, he saw D.W. working naked on appellant's property and saw appellant sitting down watching D.W. while drinking a beer.

[3] According to the sexual assault nurse examiner's report, D.W. has bipolar disorder, "ADHD," "Asperger's Syndrome," and depression.

[4] It is clear from the record that D.W. was sixteen years old when he began working for appellant.

[5] D.W. testified that during the massages, he would touch appellant's penis and appellant would ejaculate.

[6] D.W. was 17 when he made this outcry.

3

said that he asked D.W. to tell him what had happened. According to D.W.'s father, D.W. said that appellant had been having oral and anal sex with D.W. and "it started shortly after [the pair] moved down here [Rockport, Texas] in [July] 2016."[7] D.W. told his father that he did not initially tell him about the abuse because appellant had mentioned that he is "a veteran and that he has had dreams of killing people." D.W. and his father then walked to the police station where D.W. made a police report. D.W.'s father took D.W. to the local children's hospital to be examined by a sexual assault nurse examiner.[8]

On redirect examination, the State asked D.W.'s father if he remembered telling an officer that D.W. "said the sexual abuse started when he was 16?" D.W.'s father replied, "He did tell me that. Because I asked him, 'How long has this been going on?'"

**B.      Standard of Review and Applicable Law**

In reviewing the sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). Direct and circumstantial evidence are equally probative. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The factfinder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. We resolve any evidentiary inconsistencies in

---

[7] D.W.'s father clarified that he and D.W. moved to Rockport in early July prior to the Fourth of July.

[8] D.W.'s father testified that although D.W. is now twenty-two years old, "he still needs supervision" and "[h]e is not capable of living on his own."

favor of the judgment. *Id.*

We measure the sufficiency of the evidence in reference to the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327 (quoting *Malik*, 953 S.W.2d at 240). Under the Texas Penal Code, a person commits the offense of sexual assault of a child, as charged in this case, if the person intentionally or knowingly causes the anus of a child, who was then and there younger than 17 years of age, to make contact with the defendant's sexual organ. TEX. PENAL CODE ANN. § 22.011(a)(2)(D). A "child" is defined as "a person younger than 17 years of age." *See id.* § 22.011(c)(1).

## C.    Discussion

Although appellant acknowledges that D.W. testified that "he was around 15 to 16 years old when the allegations occurred," and that "the anal contact" began "after a few weeks of working" for appellant, appellant contends that other evidence shows otherwise. Appellant states that D.W. is unable to give a timeline of events, and D.W.'s testimony appeared to imply that the anal contact happened after a series of other inappropriate behaviors occurred; thus, according to appellant, the evidence leads to a reasonable doubt that D.W. was under the age of seventeen when appellant contacted D.W.'s anus with his penis.

5

These contentions attack the credibility of D.W.'s testimony, not its sufficiency. *See Criff v. State*, 438 S.W.3d 134, 137 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) ("Courts have consistently held that eyewitness testimony can be sufficient to support a conviction absent additional corroborating evidence, so long as the testimony proves every element of the offense beyond a reasonable doubt."). Our standard of review requires that we defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

In addition, as the sole judge of the weight and credibility of the evidence, the jury is free to believe or disbelieve the testimony of all witnesses and to accept or reject any or all the defensive evidence. *Braughton v. State*, 569 S.W.3d 592, 608–09 (Tex. Crim. App. 2018); *see also Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) ("As factfinder, the jury is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties."). Under our standard of review, we presume that the jury resolved conflicting inferences in favor of the verdict, and we defer to its determination of the evidentiary weight and witness credibility. *Braughton*, 569 S.W.3d at 608; *see Criff*, 438 S.W.3d at 136–37.

D.W. testified that appellant began penetrating his anus with his penis "[a]fter a few weeks of working with" appellant. D.W. started working with appellant when he was sixteen years old in July 2016 and his birthday was four months later in November. In

addition, D.W.'s father testified that D.W. told him that that the sexual abuse started when he was sixteen years old, and the anal abuse began soon after the pair moved to Rockport in early July 2016. From this evidence, the jury could have reasonably believed that D.W. was sixteen years old when appellant began penetrating D.W.'s anus with his penis.[9] Accordingly, considering all the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences drawn from that evidence. *See Whatley*, 445 S.W.3d at 166; *Brooks*, 323 S.W.3d at 898–99.

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL

By his second issue, appellant contends that his trial counsel rendered ineffective assistance for myriad of reasons. Specifically, appellant complains by five sub-issues that his trial counsel failed to: (1) "object to witness exclusion and preserve the issue for appellant review"; (2) "object to the State's improper argument at guilt-innocence"; (3) "object to the State's improper punishment argument"; (4) "object to the State's violation of [appellant's] due process rights"; and (5) "make [a] reasonable investigation." Appellant further contends that his trial counsel's "deficient performance contributed to the conviction and punishment."

### A.    Standard of Review and Applicable Law

Claims of ineffective assistance of counsel are evaluated under the two-part test articulated by the Supreme Court in *Strickland v. Washington*. *Goodspeed v. State*, 187

---

[9] *See Maldonado v. State*, 461 S.W.3d 144, 149 (Tex. Crim. App. 2015) (explaining that "penetration cannot physically occur in the absence of contact").

S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The *Strickland* test requires the appellant to show that (1) counsel's performance was deficient and (2) but for the deficient performance the result of the proceeding would have been different. *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 687. In determining the validity of appellant's claim of ineffective assistance of counsel, "any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight." *Thompson*, 9 S.W.3d at 813.

The burden is on appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Id.* Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689; *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.). A reviewing court will not second-guess legitimate tactical decisions made by trial counsel. *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) (en banc) ("explaining that unless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate"). Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions. *Thompson*, 9 S.W.3d at 813; *Jaynes*, 216 S.W.3d at 851. To prove that trial counsel rendered ineffective assistance, the defendant must show counsel's performance was substandard; that is, counsel has made errors so grave that counsel did not function as

8

guaranteed to the defendant under the Sixth Amendment. *Strickland*, 466 U.S. at 687. Or in other words, that counsel's assistance fell below an objective standard of reasonableness. *Id.*

An allegation of ineffectiveness must be "firmly founded in the record," and the record must affirmatively demonstrate the alleged ineffectiveness. *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002) (quoting *Thompson*, 9 S.W.3d at 813–14); "[I]n the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an appellant to satisfy the dual prongs of *Strickland*". *Thompson*, 9 S.W.3d at 814 n.6. "[W]e must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he made all significant decisions in the exercise of reasonable professional judgment." *Jackson v. State*, 877 S.W.2d 768, 771–72 (Tex. Crim. App. 1994) (cleaned up) (concluding that "[d]ue to the lack of evidence in the record concerning trial counsel's reasons" for the alleged ineffectiveness, the court was "unable to conclude that appellant's trial counsel's performance was deficient").

The proper measure of the first prong, attorney performance, is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. The guarantees of the Sixth Amendment rely on the legal profession's maintenance of professional norms. *Id.* Although no set of rules can satisfactorily take account of the multitude of circumstances and choices a defense counsel should make when representing a criminal defendant, representing a defendant entails certain basic duties like counsel having "to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.*

Even if professionally unreasonable, an error does not warrant setting aside the

9

judgment if there has been no prejudicial effect on the outcome. *United States v. Morrison*, 449 U.S. 361, 364–65 (1981). The test for prejudice requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Therefore, the court should consider whether the factfinder would have had reasonable doubt in respect to guilt, absent counsel's error. *Id.* at 695. In considering this question, a court adjudicating an ineffectiveness claim must consider the totality of the evidence. *Id.* at 695. Some errors might be trivial in comparison to the facts, and other errors might have a pervasive effect. *Id.* at 695, 696.

## B.    Counsel Failed to Object to Witness Exclusion and Preserve the Issue

First, by a sub-issue to his second issue, appellant contends that his trial counsel was ineffective because he did not object when the trial court limited appellant's wife Linda Southard's testimony because she violated the Rule. *See* TEX. R. OF EVID. 614 (providing that "at a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony"). Specifically, appellant argues that because the trial court abused its discretion by limiting Linda's testimony, his trial counsel erred when he failed to object to that limitation.

The trial court held a hearing on appellant's motion for new trial. At this hearing, appellant's trial counsel testified that at trial, Linda had inadvertently violated the Rule, and she heard some of the State's witnesses' testimony. Appellant's trial counsel testified at the hearing that Linda was not able to testify about "all of the areas that [he] wanted her to." He said, "She was —I was kind of put into a position that I had to get her off the

10

stand." Appellant's trial counsel stated that the State waited to object to Linda's testimony "until she was in the middle of it." Appellant's trial counsel maintained that he

> was in hopes of developing the fact that . . . [D.W.] had testified to several things with respect to the history of the family, and there were several things that Linda, from my conversations with her, I believe she could have provided [information] that would have further developed the interactions between the Southards and [D.W.'s family] and [D.W.'s] family coming to the Southards' home here in Rockport and saying . . . some of the things that she witnessed that were odd, if you would, pretty much down that line.

Appellant did not ask his trial counsel why he did not object when the trial court limited Linda's testimony for violating the Rule.

Without an explanation from appellant's trial counsel for why he did not object when the trial court limited Linda's testimony because the Rule had been violated, we are unable to determine that his failure to object was not trial strategy. *See Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851. Moreover, a claim of ineffective assistance of counsel based on counsel's failure to object must be supported by evidence that the trial court would have committed error in overruling such objection. *Prine v. State*, 537 S.W.3d 113, 117–18 (Tex. Crim. App. 2017) ("The failure to object will not support a claim of ineffective assistance unless the trial judge would have erred in overruling the objection."). Appellant does not explain on appeal how the trial court would have committed error by overruling an objection to its limiting Linda's testimony based on a violation of the Rule. Thus this issue is not adequately briefed, and we are unable to make such a determination. *See Wolfe v. State*, 509 S.W.3d 325, 345 (Tex. Crim. App. 2017) (recognizing that "that an appellate court is under no obligation to make an appellant's arguments for her"). We overrule appellant's first sub-issue to his second issue.

11

**C.     Counsel's Failure to Object to the State's Improper Argument**

Next, by a second sub-issue to his second issue, appellant complains of several

comments made by the State during closing argument at the guilt-innocence phase of

trial that he believes were objectionable. First, appellant argues that his trial counsel

should have objected to the State's argument that Omar Ortegon was surprised that

appellant was married because "he knew that [appellant] was messing around with young

men. Men. Not women." Appellant then argues that his trial counsel was ineffective by

failing to object when the State argued that appellant had been "grooming" D.W. Next,

appellant claims that his trial counsel should have objected to the State's argument

implying that appellant "intentionally erased D.W.'s phone to destroy evidence" because

"there was no evidence to support that implication." Next, appellant faults his trial counsel

for not objecting to the State arguing: "[Linda] got to hear every other witness testify. The

State's witnesses did not hear each other testify. They didn't need to because they are

telling the truth. Meanwhile," Linda "got to literally take notes and then testify after that so

she could make sure it was convenient to match her story. She clearly has bias." Finally,

appellant complains that his trial counsel should have objected when the State made the

following closing argument:

> This is your community. He still lives here, ladies and gentlemen. He still
> lives here. So what are you going to do? Are you going to have the wool
> pulled over your eyes?
>
> At Whistler's Cove, behind closed doors, you want him with your kid?
> Peachtree, Cherry Hills, you want him with your child behind closed doors
> with your young men?
>
> He has tried to fool you this entire trial . . . the only way he is going
> to get away with it is if the twelve of you let him. You are in this box for a

reason.

. . . .

Now make the right decision and protect your community from this predator.

Specifically, appellant claims that by making the above-quoted argument, the State in essence asked the "jury to abandon objectivity"; thus, his trial counsel rendered ineffective assistance by not objecting.

Appellant contends "there is no reasonable trial strategy for allowing the State to continue without rebuke." Nonetheless, as previously stated, it is appellant's burden to prove by a preponderance of the evidence that the trial court would have committed error by overruling any objections to the complained-of statements. *See Prine*, 537 S.W.3d at 117–18. Appellant does not cite authority supporting his conclusion that the trial court would have abused its discretion by overruling these objections, and he does not provide legal analysis supporting such a conclusion. *See* TEX. R. APP. P. 38.1(i). Moreover, appellant does not state how he was prejudiced by his trial counsel's failure to object to the complained-of comments; thus appellant has inadequately briefed this sub-issue. *See id.*; *see also Wolfe*, 509 S.W.3d at 345. Accordingly, we overrule appellant's second sub-issue pertaining to these complaints.

### D.     Failure to Object to the State's Improper Punishment Argument

Next, by a third sub-issue, appellant contends that during the punishment phase of trial, his trial counsel should have objected to: (1) the State's argument that appellant "showed up" to trial "because he was arrogant enough to think that he will get away with it"; (2) "[t]he State's accusation that [appellant] would violate probation by 'running' simply

13

because he had collected rental income in cash"; (3) the State's assertion that D.W. suffered burns to his body after walking without a shirt and shoes that it wrongly attributed to appellant's behavior; and (4) the State's argument that "if [appellant] is given probation, he is your neighbor again. Is that what you want, your children, your grandchildren exposed to? Absolutely not."

Appellant does not provide a legal analysis of his complaints with citation to appropriate authority that would lead this Court to conclude that his trial counsel committed error by not objecting to the State's comments. *See* TEX. R. APP. P. 38.1(i). Accordingly, this issue is inadequately briefed. *See id.* Therefore, we overrule it.

**E.     Failure to Object to the State's Due Process Violation**

By a fourth sub-issue, appellant complains that his trial counsel should have objected when the State "blatantly violated [appellant's] valuable rights by repeatedly commenting on his post-arrest silence." Specifically, appellant argues that the State violated his right to remain silent when it asked him on cross-examination, "On June 29, 2017, law enforcement arrested you and told you what you were being charged with, correct?" and law enforcement "gave you an opportunity to say at that point whatever you wanted to say?" Appellant also claims that his trial counsel was ineffective when the State questioned him about whether he disclosed to law enforcement that (1) D.W. was "very upset a couple of days prior" to D.W.'s outcry to his father and (2) appellant was impotent.

**1.     Complained-of Conduct**

Appellant testified that on the date that D.W. reported the incidents to his father, D.W. had become very upset. Appellant's trial counsel attempted to ask appellant why

14

D.W. was upset, and the trial court sustained the State's objection to the testimony as hearsay. Thus, appellant was not allowed to answer this question.

On cross-examination, the State asked, "Now, in regards to [D.W.] being very upset a couple of days prior to you dropping him off at the Burks property, did you disclose any of that to the police?" Appellant said, "No." Then the State asked, "The allegations that you are impotent, was any of that ever reported to law enforcement?" Appellant replied, "No."[10]

On redirect examination, appellant's trial counsel asked, "Did law enforcement ever ask you if you were impotent?" Appellant responded, "No."

The State on recross-examination then asked, "On June 29, 2017, law enforcement arrested you and told you what you were being charged with, correct?" and law enforcement "gave you an opportunity to say at that point whatever you wanted to say?" Appellant answered both questions affirmatively.

During its closing argument, the State argued that appellant "did not tell law enforcement about being impotent" and "did not tell law enforcement the story about D.W. being upset."

## 2. Discussion

The Texas Court of Criminal Appeals has determined that a Fifth Amendment violation occurs only when the State induces the defendant's "silence by implicitly assuring the defendant that his silence would not be used against him" but then attempts

---

[10] Linda had already testified that appellant had been taking blood pressure medication that caused him to be impotent.

to impeach the defendant by commenting on the defendant's silence. *See Cisneros v. State*, 692 S.W.2d 78, 83–84 (Tex. Crim. App. 1985). "The United States Supreme Court held in *Doyle v. Ohio* that the federal Due Process Clause prohibits the cross-examination of a defendant concerning his silence after he has been arrested and given *Miranda* warnings." *Id.* (citing 426 U.S. 610, 619, 96 (1976)) (emphasis added). The *Cisneros* court explained that "[t]his prohibition serves to prevent a jury from drawing inferences of guilt from a defendant's decision to remain silent after being told he has a right to remain silent." *Id.*

"Once the defendant testifies '[t]he interests of the other party and regard for the function of the courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination.'" *Id.* at 83–84 (concluding that because the defendant testified at trial, he "waived his right to remain silent at trial" and "was thus subject to impeachment regarding his previous silence," and the interrogation by the prosecutor as to his silence "did not appear to relate to a time when the defendant was under arrest"). Thus, to find that appellant's trial counsel rendered ineffective assistance, it is appellant's burden to show that the error is firmly founded in the record and that the trial court should have sustained an objection on the basis that the State's complained-of statements and questions pertained to appellant's post-arrest, post-*Miranda* silence. *See Salinas v. State*, 369 S.W.3d 176, 179 (Tex. Crim. App. 2012) (holding "that pre-arrest, pre-*Miranda* silence is not protected by the Fifth Amendment right against compelled self-incrimination"), *aff'd*, 570 U.S. 178 (2013); *Valmana v. State*, 605 S.W.3d 490, 511 (Tex. App.—El Paso 2020,

pet. ref'd) ("[T]he Fifth Amendment only protects a defendant against compulsory self-incrimination after a defendant has been arrested or when he is the subject of custodial interrogation. The Fifth Amendment does not prohibit the State from introducing evidence of a defendant's pre-arrest, pre-*Miranda* silence." (citation omitted)); *Buentello v. State*, 512 S.W.3d 508, 521 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (citing *Salinas* and holding that because appellant's pre-arrest, pre-*Miranda* silence was not protected by the Fifth Amendment, "the prosecutor was permitted to comment at trial on that silence").

Here, it is unclear from this record whether the State was referring to appellant's post-arrest, post-*Miranda* silence when it asked, "Now, in regards to [D.W.] being very upset a couple of days prior to you dropping him off at the Burks property, did you disclose any of that to the police?" and "The allegations that you are impotent, was any of that ever reported to law enforcement?" *See Cisneros*, 692 S.W.2d at 83. And, although appellant filed a motion for new trial, at the hearing, he did not make a claim that his trial counsel was ineffective by failing to object to the complained-of questions. Thus, there is nothing in the record showing that the State's questions pertained to appellant's post-arrest, post-*Miranda* silence. Therefore, we are unable to determine whether the trial court would have erred by failing to sustain objections to these questions. *See id.*

However, pursuant to the Texas Constitution, the State's questions asking if appellant had an opportunity to tell police "whatever he wanted to" when he was arrested is considered a comment on appellant's post-arrest silence. *See Sanchez v. State*, 707 S.W.2d 575, 579–80 (Tex. Crim. App. 1986) (plurality opinion) (holding that the Texas Constitution provides more expansive protection to a defendant in this circumstance;

17

specifically, a defendant's silence cannot be used against him for any purpose, even impeachment, once a defendant has been arrested—regardless of whether he has received his *Miranda* warnings) (citing TEX. CONST. art. I, § 10)). The Texas Court of Criminal Appeals concluded that "a defendant may not be impeached through the use of post-arrest, pre-*Miranda* silence since such impeachment violates the defendant's right to be free from compelled self-incrimination." *See id.* at 582.

Nonetheless, at the motion for new trial hearing, appellant did not question his trial counsel about his failure to object, and the record is silent in this regard. *See Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) ("When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined."); *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007) (observing that the appellate record was silent as to why trial counsel failed to so object to improper jury argument, and the presumption that trial counsel's "decision was in some way—be it conceivable or not—reasonable" had not been rebutted); *see also Rosewell v. State*, No. 06-19-00037-CR, 2019 WL 3850087, at *3 (Tex. App.—Texarkana Aug. 16, 2019, no pet.) (mem. op., not designated for publication) (conceiving a possibility that trial counsel failed to object to State's reference to the appellant's post-arrest silence because "counsel believed it best not to call attention to the testimony by voicing an objection"). Moreover, we do not judge a trial counsel's performance in hindsight and instead "review the totality of the representation."[11] *See Lopez*, 343 S.W.3d at 143. "[T]o establish that

---

[11] In *Lopez*, the Texas Court of Criminal Appeals stated the following:

This Court has repeatedly stated that claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus. On direct appeal, the record is usually

counsel's acts or omissions were outside the range of professionally competent assistance, the defendant must show that counsel's errors were so serious that he was not functioning as counsel." *Robison v. State,* 461 S.W.3d 194, 203 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Reviewing trial counsel's act under the proper standard, we are unable to state that he was not functioning as counsel when he failed to object to the complained-of statements and questions made by the State. *See id.* at 205 (stating that because "[t]he record does not affirmatively reveal counsel's strategy for asking" questions about the appellant's post-arrest silence as he "did not file a motion for new trial, and counsel never produced live or affidavit testimony explaining his strategy," the court could not "conclude that counsel's performance was constitutionally deficient if any strategic motivations can be imagined for the challenged conduct").

Furthermore, on appeal, appellant has not shown that but for his trial counsel's failure to object to the complained-of questions and statements, the result of the proceeding would have been different. *See Thompson*, 9 S.W.3d at 812. Instead, appellant complains that the cumulative effect of his trial counsel led to his conviction. Therefore, we are unable to conclude that appellant's trial counsel was ineffective. We overrule his fourth sub-issue.

## F.      Reasonable Investigation & Failure to Call Witnesses

---

inadequately developed and "cannot adequately reflect the failings of trial counsel" for an appellate court "to fairly evaluate the merits of such a serious allegation." Unlike other claims rejected on direct appeal, claims of ineffective assistance of counsel rejected due to lack of adequate information may be reconsidered on an application for a writ of habeas corpus.

*Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) (internal citations omitted).

By a fifth sub-issue to his second issue, appellant contends that his trial counsel was ineffective because he did not fulfill his "duty to make reasonable investigations or to make a reasonable decision that make particular investigations unnecessary." Appellant faults his trial counsel for relying "upon the State's witness list rather than determin[ing] the availability of critical witnesses and issu[ing] subpoenas in advance of trial." Specifically, appellant complains that his trial counsel was ineffective for not ensuring that several witnesses would testify at trial, including the following: (1) Rhiannon Parker Ramos, the police officer that D.W.'s father spoke with about D.W.'s accusation; (2) Jerry Lawing, the Rockport police officer who was aware of the department's seizure of several items of electronics from appellant's home; (3) Penny Gaddis, the nurse who performed the sexual assault examination of D.W.; and (4) Robin Castro, the DNA analyst who determined that appellant's DNA had not been found on D.W.

### 1. Applicable Law

An appellant challenging his trial counsel's failure to call a particular witness, "must show that [the witness would have] been available to testify and that [the witness's] testimony would have been of some benefit to the defense." *Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007)). Absent such a showing, "the 'failure to call witnesses at the guilt-innocence and punishment stages is irrelevant.'" *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (citing *King v. State*, 649 S.W.2d 42 (Tex. Crim. App. 1983)).

### 2. Ramos

At the motion for new trial hearing, appellant's trial counsel testified that Rhiannon

Parker Ramos was not able to appear at appellant's trial because "she was experiencing what she either thought was COVID or what they interpreted to me as her having COVID-like symptoms." According to appellant's trial counsel, Ramos "did inform our office that because of her health issues she was not going to be available for trial." Because the record shows that Ramos was not available to testify at trial, appellant's trial counsel's failure to call Ramos is irrelevant. *See Ex parte Ramirez*, 280 S.W.3d at 853; *Perez*, 310 S.W.3d at 894.

### 3. Lawing

Regarding Jerry Lawing, appellant's trial counsel testified that the defense had been notified that Lawing had knowledge that none of the electronic equipment taken from appellant's residence had been analyzed. Appellant's trial counsel informed appellant's motion for new trial counsel that Lawing had retired by the time of appellant's trial, and an email regarding the electronic equipment had been produced by the State after Lawing's retirement. Appellant's trial counsel stated that he had "a subpoena issued" for Lawing "that morning of the 29th," which was the first day of appellant's trial, but it had been returned unserved because Lawing "was in Italy on vacation." The failure to call Lawing is irrelevant because the evidence presented shows that Lawing was unavailable to testify as he was in another country. *See Ex parte Ramirez*, 280 S.W.3d at 853; *Perez*, 310 S.W.3d at 894.

### 4. Gaddis

Appellant's trial counsel testified that Gaddis was the nurse who performed the sexual assault exam on D.W. and wrote the report. According to appellant's trial counsel,

Gaddis was not subpoenaed, and she did not testify at appellant's trial. Appellant's trial counsel stated that he "didn't really care" if Gaddis was "brought in or not" at appellant's trial "because the SANE report didn't prove anything one way or the other." He further testified that "the fact that [Gaddis did not testify] didn't really affect my plan." Regarding whether he contacted Gaddis, appellant's trial counsel stated, "I tried to contact her; wasn't able to." Appellant's trial counsel said that he "wasn't putting a lot on using" Gaddis's testimony. In addition, appellant's trial counsel testified that "there is a lot of things that Ms. Gaddis could have said that could have been somewhat harmful" and that he was not "relying on her as one of [his] primary witnesses." Appellant's trial counsel averred that he did not seek a continuance from the trial court to ensure Gaddis's appearance "because . . . I could see as many cons as pros as far as forcing her to be here. It could have cut either way." Appellant's trial counsel explained that he did not make an offer of proof for Gaddis's testimony because "the consequences could have been as harmful or more harmful than any help I got out of that."

Trial counsel's testimony concerning Gaddis was that although he would have dealt with her had the State called her to testify, he did not pursue her appearance because her testimony would have been "more harmful" to appellant's case. Therefore, appellant has not shown that Gaddis's testimony would have been of some benefit to the defense. *See Ex parte Ramirez*, 280 S.W.3d at 853; *Perez*, 310 S.W.3d at 894. Moreover, appellant's trial counsel explained that his failure to call Gaddis to testify at appellant's trial was based on his trial strategy of avoiding any witness who could harm appellant's defense. *See Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851; *see also Morales*,

22

253 S.W.3d at 696.

### 5. Castro

Appellant's trial counsel testified that Robin Castro was the analyst who performed the DNA test on samples taken from D.W. during the sexual assault examination. The DNA test merely showed D.W.'s DNA. There was no other DNA discovered in the samples. Thus, according to appellant's trial counsel, Castro's testimony, was neither "helpful" nor "hurtful." The failure to call Castro is irrelevant because the evidence presented shows that Castro's testimony was not of some benefit to appellant's defense. *See Ex parte Ramirez*, 280 S.W.3d at 853; *Perez*, 310 S.W.3d at 894. Appellant has not shown that but for his trial counsel's failure to call Castro, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. We overrule appellant's fifth sub-issue to his second issue.[12]

## III. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
25th day of May, 2023.

---

[12] By his sixth sub-issue to his second issue, appellant contends that due to cumulative error, his trial counsel was ineffective. However, we have not found multiple instances of error in this case. Thus, there is not a showing of cumulative error here. *See Bryant v. State*, 282 S.W.3d 156, 176 (Tex. App.—Texarkana 2009, pet. ref'd) (explaining that there is no authority supporting a conclusion that "non-errors may in their cumulative effect cause error").